**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL, <br><br> Plaintiff, <br><br> v. <br><br> UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS, <br><br> Defendants. | Civil Action No.: 2:24-cv-01895 <br><br> **JURY TRIAL REQUESTED** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
ITS MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................................1

II.    FACTUAL BACKGROUND........................................................................................2

    a.    ASTM and its Copyrighted Standards .............................................................2

        1.    ASTM's History and Process for the Development of Standards ..............2

        2.    ASTM Funds Its Standards Development by Selling and Licensing ASTM's Standards.......................................................................................6

        3.    ASTM's Longstanding Trademark Has Acquired Significant Goodwill ....7

        4.    The Public Benefits from ASTM's Standards and the SDO Ecosystem. ....7

    b.    Defendants' Infringement of ASTM's Copyrighted Works and Mark...................9

        1.    Defendants' Exploitation of ASTM's Copyrighted Standards ...................9

        2.    Defendants' Removal and/or Alteration of ASTM's Copyright Management Information........................................................................11

        3.    Defendants Infringing Use of ASTM's Mark ...........................................11

III.    ARGUMENT ..............................................................................................................12

    a.    ASTM is likely to succeed on the merits of its claims. ..................................13

        1.    ASTM is likely to succeed on the merits of its copyright claim...............13

            i.    ASTM owns valid copyrights in the works. ...............................14

                a.    Defendants cannot rebut the presumption that ASTM owns valid copyrights in ASTM Copyrighted Works................14

            ii.    Defendants violate numerous of ASTM's exclusive rights. ..........16

            iii.    Defendants' anticipated affirmative defenses are meritless...........17

                a.    Defendants cannot show their affirmative defense of fair use is likely to succeed.......................................................18

                b.    Defendants cannot show their affirmative defense of merger is likely to succeed.................................................23

        2.    ASTM is likely to succeed on its trademark claims. ................................24

    b.    ASTM will suffer irreparable harm absent a PRELIMINARY injunction............26

        1.    ASTM will suffer irreparable harm unless Defendants are preliminarily enjoined from infringing ASTM's Copyrighted Works. ...........................26

        2.    Defendants cannot rebut the presumption that ASTM will suffer irreparable harm unless Defendants are enjoined from infringing the ASTM Mark.............................................................................................30

        3.    ASTM will suffer irreparable harm by virtue of Defendants' repeated intellectual property infringement and inability to satisfy a judgment. .....31

    c.    The balance of hardships decisively favors ASTM. .......................................32

    d.    A preliminary injunction is in the public interest. ..........................................33

IV.    CONCLUSION..........................................................................................................33

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*22nd Century Techs., Inc. v. iLabs, Inc.*,
 2023 WL 3409063 (3d Cir. May 12, 2023) ...............................................................28

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
 237 F.3d 198 (3d Cir. 2000)...............................................................................24, 25

*Am. Soc'y for Testing & Materials et al. v. Public.Resource.Org, Inc.*,
 896 F.3d 437 (D.C. Cir. 2018) ..............................................................14, 19, 21, 22

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
 597 F. Supp. 3d 213 (D.D.C. 2022) ..........................................................................20

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
 42 F.3d 1421 (3d Cir. 1994)......................................................................................33

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
 598 U.S. 508 (2023)...........................................................................................18, 19

*Apple Comput., Inc. v. Franklin Comput. Corp.*,
 714 F.2d 1240 (3d Cir. 1983)..............................................................................26, 33

*Authors Guild, Inc. v. Google Inc.*,
 954 F. Supp. 2d 282 (S.D.N.Y. 2013), *aff'd*, 804 F.3d 202 (2d Cir. 2015) ............16

*Bell Helicopter Textron Inc. v. Airbus Helicopters*,
 78 F. Supp. 3d 253 (D.D.C. 2015) ............................................................................27

*BGSD, Inc. v. SpazeUp, LLC*,
 2024 WL 1619279 (E.D. Pa. Apr. 15, 2024) ............................................................26

*Bieg v. Hovnanian Enters., Inc.*,
 157 F. Supp. 2d 475 (E.D. Pa. 2001) ........................................................................14

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*,
 628 F.2d 730 (1st Cir. 1980)......................................................................................15

*Breaking the Chain Found. v. Capitol Educ. Support, Inc.*,
 589 F. Supp. 2d 25 (D.D.C. 2008)............................................................................31

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994)...............................................................................19, 20, 22, 23

*Capitol Records, LLC v. ReDigi Inc.*,
   910 F.3d 649 (2d Cir. 2018)........................................................................23

*CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc.*,
   44 F.3d 61 (2d Cir. 1994)....................................................................15, 33

*Coventry First, LLC v. Ingrassia*,
   2005 WL 1625042 (E.D. Pa. July 11, 2005 .........................................28

*Darius Int'l, Inc. v. Young*,
   2006 WL 1071655 (E.D. Pa. Apr. 20, 2006) .......................................25

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting Inc.*,
   307 F.3d 197 (3d Cir. 2002)................................................................13

*Eli Lilly and Co. v. Premo Pharm. Lab'ys, Inc.*,
   630 F.2d 120 (3d Cir. 1980)................................................................32

*F.A. Davis Co. v. Wolters Kluwer Health, Inc.*,
   413 F. Supp. 2d 507 (E.D. Pa. 2005) .................................................23

*Facility Guidelines Inst., Inc. v. UpCodes, Inc.*,
   677 F. Supp. 3d 955 (E.D. Mo. 2023).................................................14

*Facility Guidelines Institute, Inc. v. UpCodes, Inc.*,
   Case No. 4:22-cv-1308 (E.D. Mo.) .......................................................9

*FMC Corp. v. Control Sols., Inc.*,
   369 F. Supp. 2d 539 (E.D. Pa. 2005) ....................................13, 17, 21

*Fox News Network, LLC v. TVEyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018)................................................................19

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
   915 F. Supp. 2d 1138 (C.D. Cal. 2012) .............................................28

*Georgia v. Public.Resource.Org, Inc.*,
   590 U.S. 255 (2020)............................................................................15

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*,
   864 F. Supp. 2d 316 (E.D. Pa. 2012) .................................................32

*Greater Phila. Chamber of Com. v. City of Phila.*,
   949 F.3d 116 (3d Cir. 2020)................................................................17

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
   774 F.3d 192 (3d Cir. 2014)..........................................................29, 31

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)...............................................................................20, 21

*Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*,
    497 F. Supp. 2d 627 (E.D. Pa. 2007) ...................................................17

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
    Case No. 1:17-cv-6261, 2020 WL 2750636 (S.D.N.Y. May 27, 2020) ........................ passim

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir.1983)...................................................................25

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)................................................12, 13, 25, 30

*Laidlaw, Inc. v. Student Transp. of Am.*,
    20 F. Supp. 2d 727 (D.N.J. 1998) ........................................................28

*Maduka v. Tropical Naturals, Ltd.*,
    409 F. Supp. 3d 337 (E.D. Pa. 2019) ...................................................14

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
    312 F.3d 94 (2d Cir. 2002)...................................................................28

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    888 F. Supp. 2d 691 (D. Md. 2012) .....................................................29

*MGM Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...........................................28, 29

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011)............................................................19, 21

*Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*,
    Case No. 2:21-cv-05262, 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) .....................9, 14, 17

*Novartis Corp. v. Teva Pharms. USA, Inc.*,
    2007 WL 1695689 (D.N.J. June 11, 2007)............................................32

*Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*,
    121 F.3d 516 (9th Cir. 1997) ...........................................................15, 24

*Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*,
    38 F.4th 331 (3d Cir. 2022) .................................................................13

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017)............................................................12, 13

*Richardson v. Cascade Skating Rink*,
　　2022 WL 833319 (D.N.J. Mar. 21, 2022)..............................................................25

*Rigby v. Jennings*,
　　630 F. Supp. 3d 602 (D. Del. 2022)........................................................................26

*Salinger v. Colting*,
　　607 F.3d 68 (2d Cir. 2010)..............................................................................28, 29

*Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*,
　　319 F. Supp. 3d 754 (D.N.J. 2018)........................................................................26

*Silvertop Assocs. v. Kangaroo Mfg., Inc*,
　　931 F.3d 215 (3d Cir. 2019)............................................................................23, 24

*Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*,
　　689 F.3d 29 (1st Cir. 2012)....................................................................................23

*Symbol Techs., Inc. v. Janam Techs. LLC*,
　　729 F. Supp. 2d 646 (D. Del. 2010)......................................................................32

*TD Bank N.A. v. Hill*,
　　2015 WL 4523570 (D.N.J. July 27, 2015)............................................................19

*TechnoMarine SA v. Giftports, Inc.*,
　　758 F.3d 493 (2d Cir. 2014)..................................................................................31

*Theia Techs. LLC v. Theia Grp., Inc*,
　　2021 WL 291313 (E.D. Pa. Jan. 28, 2021) ......................................................24, 33

*Veeck v. S. Bldg. Code Cong. Int'l Inc.*,
　　293 F.3d 791 (5th Cir. 2002) (*en banc*) ..........................................................14, 16

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
　　192 F. Supp. 2d 321 (D.N.J. 2002) .......................................................................17

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
　　342 F.3d 191 (3d Cir. 2003)..................................................................................18

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*,
　　824 F. Supp. 2d 1003 (C.D. Cal. 2011) ...............................................................27

*Warren Publ'g Co. v. Spurlock*,
　　645 F. Supp. 2d 402 (E.D. Pa. 2009) ...................................................................20

*Worldwide Church of God v. Phila. Church of God, Inc.*,
　　227 F.3d 1110 (9th Cir. 2000) .......................................................................19, 21

**Statutes**

15 U.S.C. § 1116(a) ..................................................................................................30

17 U.S.C. § 101 .......................................................................................................16

17 U.S.C. § 106 .......................................................................................................16

17 U.S.C. § 107 ...................................................................................................20, 22

17 U.S.C. § 410(c) ...................................................................................................14

**Other Authorities**

Xian Gu, P.K. Kannan, & Liye Ma, *How Companies Can Get the Most Out of a
    Freemium Business Model,* HARVARD BUSINESS REVIEW (Mar. 20, 2019) ...........................10

## I.      INTRODUCTION

UpCodes, Inc. ("UpCodes") and its founders, Garrett Reynolds and Scott Reynolds (collectively with UpCodes, "Defendants"), built a for-profit enterprise off of the mass commercial exploitation of copyrighted works created for the betterment of the public by non-profit standards development organizations ("SDO").  Although UpCodes attempts to disguise its actions as an educational enterprise, the reality is that Defendants seek to line their pockets and those of their venture capitalist investors by providing access to unauthorized copies of copyrighted works.

American Society for Testing and Materials d/b/a ASTM International ("ASTM"), a not-for-profit organization with a mission to improve the lives of millions through the development of voluntary consensus standards, is the latest victim of Defendants' scheme.  ASTM dedicates significant resources and time to the creation of its high-quality standards which are used to improve product quality, enhance health and safety, and build consumer confidence.  Defendants seek unfairly to capitalize on ASTM's investment in developing copyrighted works, without any compensation or permission, to create a competitive substitute for ASTM's works and rob ASTM of its primary sources of revenue—the sale and licensing of its copyrighted works.  Defendants' infringement jeopardizes ASTM's ability to continue creating vital safety standards and threatens to eradicate the entire SDO ecosystem, both of which offer invaluable public benefits by developing a uniform set of standards with subject matter experts.

Defendants never sought permission from ASTM to post its copyrighted works on their website, up.codes (the "UpCodes Website"), and knew ASTM would object to the unauthorized copying and distribution of them.  Making matters worse, Defendants promote their inferior copies of ASTM's copyrighted works as "ASTM publications" in order to deceive and confuse their users into believing that ASTM is affiliated with Defendants or, at a minimum, approves of and licenses Defendants' activities.  It does not.  Defendants' blatant violation of ASTM's valuable intellectual

property rights must be enjoined to avoid immediate and irreparable injury to ASTM and unavoidable consumer confusion resulting from Defendants' use of an identical trademark. Defendants' actions upend the status quo and cause irreversible harm to ASTM. The requested injunction is necessary to preserve that status quo.

## II.    FACTUAL BACKGROUND

### A.  ASTM AND ITS COPYRIGHTED STANDARDS

#### 1.  *ASTM's History and Process for the Development of Standards*

Standards are publications that contain product specifications, installation methods, methods for manufacturing or testing materials, recommended practices to promote safety or efficiency, or other guidelines or best practices that are developed by private organizations, "standards development organizations" or "SDOs," who have technical expertise in the relevant areas. May 3, 2024 Declaration of Thomas O'Brien, Jr. ("O'Brien Decl.") ¶ 5.

ASTM is a not-for-profit organization founded in 1898 to develop standards to support the then novel railroad industry in the United States. O'Brien Decl. ¶ 6. ASTM is now a globally recognized leader in the development of voluntary consensus standards and one of the world's largest international SDOs. *Id.* ¶ 7. ASTM is committed to serving global societal needs by positively impacting public health and safety, consumer confidence, and overall quality of life through the development of voluntary consensus standards. *Id.* ¶ 8. To date, ASTM has developed almost 13,000 ASTM standards setting forth specifications and methods of testing for a variety of materials, products, systems, and services that bolster safety and performance across industries. *Id.* ¶ 9. ASTM standards are used in a wide range of fields, including construction, consumer products, iron and steel products, rubber, paints, plastics, textiles, medical services and devices, electronics, construction, energy, water, petroleum products, and more. *Id.* ¶ 10.

More than 30,000 ASTM members from over 155 countries create and update ASTM's standards. *Id.* ¶ 11. ASTM is able to create high quality standards due to the deep expertise and diversity of its members who collectively represent industry, governments, academia, trade groups, enterprises of all sizes, consumers, and others. *Id.* ¶ 12. To ensure broad stakeholder representation in the standards development process, ASTM minimizes the barriers to membership to the extent possible. *Id.* ¶ 13. Individual ASTM memberships are $115 annually and grant the member full participation in the development process and free access to relevant standards. *Id.* ¶¶ 14-15, Ex. 1. ASTM often waives the membership fee for interested consumers or participants from developing countries. *Id.* ¶ 11.

ASTM's standard development process is accredited by the American National Standards Institute ("ANSI"), a not-for-profit organization that coordinates the development of voluntary consensus standards development in the United States and accredits SDOs, like ASTM, whose procedures meet ANSI's requirements for openness, consensus, and due process. *Id.* ¶ 16. ASTM's standards development activities are governed by an ANSI-accredited detailed set of written procedures to ensure compliance with the essential requirements of the voluntary consensus standard development process. *Id.* ¶ 17-19.

ASTM's standards development process begins with an individual who identifies an area of interest ripe for standardization. *Id.* ¶ 20. The individual then issues a formal request to form a new task group or subcommittee to the appropriate ASTM Technical Committee. *Id.* If a Technical Committee does not exist, a formal request is issued to establish a new committee. *Id.* Once the subcommittee approves the creation of a new standard, a task group is formed to develop a first draft. *Id.* The standard is drafted through an iterative and collaborative process by members of the task group. *Id.* ¶ 21. The draft is edited by an ASTM staff member, who adds certain

language and components required by the ASTM form and style guide.  *Id*.  Once complete, the draft standard is sent to the Chair of the subcommittee who approves sending the initial draft to ASTM for formal balloting.  *Id.*  The draft standard is then voted on by first the entire subcommittee, then the main committee, and then open for comment by the complete Society and the public. *Id.* ¶ 22.  At least 66.7% of the voting subcommittee members and 90% of the voting main committee members must approve all standard actions, with not less than 60% of voting members returning ballots.  *Id.*  During each level of balloting, members (and the public at the Society level) can vote affirmative, negative or abstain.  *Id.*  Negative votes must have a written explanation and are addressed to evaluate their persuasiveness.  *Id.*  ASTM has a voting process for determining whether a negative comment is persuasive or is not persuasive.  *Id.*  Persuasive negative comments cause the ballot to fail.  *Id.*  Finally, the Committee on Standards reviews the handling of objections (negatives) to the draft to ensure all procedures were followed.  *Id.*

Once a standard has successfully passed through the three levels of peer review provided by ASTM (subcommittee, main committee, and Society), it is assigned a fixed designation and receives an official approval date.  *Id*. ¶ 23.  It is only then that the document is considered an ASTM standard.  ASTM has developed its almost 13,000 standards using this rigorous and consensus-based approach.  *Id.*  All ASTM standards are reviewed on a five-year schedule and either reapproved, revised or withdrawn in revision cycles typically lasting between eight and twelve months. *Id.* ¶ 24.

ASTM's standards, including the works at issue in this case ("ASTM's Copyrighted Works"), are original works of authorship with content that requires a high degree of creativity to

prepare technical information in a concise and understandable standard.[1]  *Id.* ¶ 25.  For decades,

ASTM has obtained Certificates of Copyright Registration from the Register of Copyrights for its

standards.  *Id.* ¶¶ 27-39, Exs. 2-11.  Information regarding the registrations for each of "ASTM's

Copyrighted Works," or the works alleged to be infringed by Defendants, are set forth below.

### ASTM's Copyrighted Works

| Title | Edition | Registration No. |
|---|---|---|
| ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel. | 2014 | TX 8-068-653 |
| ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles.[2] | 2010 | TX 7-550-513 |
| ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete. | 2018 | TX 8-690-736 |
| ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process.[3] | 2017 | TX 8-217-668 |
| ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement. | 2016 | TX 8-217-259 |
| ASTM A875/A875M – 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process. | 2013 | TX 7-886-878 |
| ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process. | 2017 | TX 8-422-153 |
| ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate. | 2014 | TX 8-062-199 |
| ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Steel Bars for Concrete Reinforcement. | 2015 | TX 8-142-387 |
| A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments. | 2013 | TX 7-935-900 |

---

[1] Copies of ASTM's Copyrighted Works are attached to the May 3, 2024 Declaration of Jane W. Wise ("Wise Decl.").  Wise Decl. ¶¶ 2-11, Exs. 14-23.
[2] Copyright registration covers 2012 Annual Book of ASTM Standards-- Steel--Piping, Tubing, Fittings, in which ASTM A252 is published.
[3] Copyright registration covers ASTM A653/A653M-15e1.

### 2. *ASTM Funds Its Standards Development by Selling and Licensing ASTM's Standards.*

To create high-quality standards using an ANSI-accredited voluntary consensus process, ASTM incurs substantial costs to maintain its standards development infrastructure and delivery platforms, including the resources necessary for collaboration, Technical Committee meetings, balloting, editorial, production, distribution, promotion, and protection of the ASTM standards as well as maintaining and achieving its ANSI accreditation. O'Brien Decl. ¶ 41. In addition to the value of the time and expertise of ASTM's members who participate in the standards development process, ASTM must expend substantial resources on administrative, technical, and other necessary support such as salary and benefits for administrative and expert staff, office space, meeting facilities, outreach and education efforts, information technology, among other things. *Id.* ¶ 42.

To fund the costs incurred for the development of ASTM standards, ASTM uses revenue derived from the sales or licensing of its copyrighted standards to persons and companies who use the standards in their professional work. *Id.* ¶ 43. Sales and licensing of ASTM's standards account for about 70% of ASTM's total revenue. *Id.* ¶ 44. ASTM also generates revenue through its offer of standards-related products and services. *Id.* ¶ 44. For example, ASTM Compass, is a subscription platform that provides access to ASTM standards along with productivity tools for sharing, version comparison, and annotation. *Id.* ¶¶ 45-46, Ex. 12.

The revenue ASTM generates through licensing and sales of its copyrighted works allows ASTM to continue to fund the infrastructure supporting the development of its high-quality standards. *Id.* ¶¶ 43, 47.

### 3.   *ASTM's Longstanding Trademark Has Acquired Significant Goodwill*

ASTM uses the ASTM trademark (the "ASTM Mark") in connection with its sale and distribution of ASTM's standards (including the sale of hardcopy and electronic publications, providing a website, promotional services, and educational services featuring information in the field of specifications and methods of testing for a variety of materials and products).  O'Brien Decl. ¶ 48, Ex. 13.  ASTM owns the exclusive trademark rights to the ASTM Mark which is registered on the Principal Register as Registration No. 2,679,320 in connection with goods and services in Classes 16, 35, 41, and 42.  *Id.* ¶ 48, Ex. 13.

Through its exclusive, continuous, and widespread use, ASTM's Mark has acquired a substantial amount of goodwill, and consumers have come to rely on ASTM's Mark to identify ASTM's high-quality goods and services.  *Id.* ¶ 49.

### 4.   *The Public Benefits from ASTM's Standards and the SDO Ecosystem.*

ASTM's standards provide significant benefits to the public.  ASTM's standards positively impact public health, safety and overall quality of life.  *See* O'Brien Decl. ¶ 8.  Many of ASTM's standards are used by professionals and specialists – including manufacturers, installers, trades people, engineers, architects, and technical experts.  *Id.* ¶ 50.

Some federal, state, and local jurisdictions incorporate by reference ("IBR") privately authored standards.  *Id.* ¶ 51.  Government entities, who often lack the resources or the technical knowledge to develop standards themselves, will reference a standard developed by SDOs to the benefit of the public and at little to no cost to the taxpayer.  *Id.*  This process allows industries to advance with a uniform standard across multiple jurisdictions, rather than requiring each locality to develop and test their own rules for a particular field.  *Id.*  In the absence of standards, the process would be doubly inefficient, duplicating efforts on the front end, and requiring industries to meet multiple jurisdictions' requirements on the back end.  *Id.*  And, while SDOs solicit broad

input from leading experts and participants with a wide variety of interests, an individual jurisdiction would be unlikely to attract the same intensity or diversity of views, worsening the resulting standards it crafted.  *Id*.  The development and use of privately developed standards allows the government to be nimbler in addressing industry needs and emerging technologies.

In some instances, a jurisdiction may incorporate by reference the work of another SDO which in turn references an ASTM standard, *i.e..,* a "third-party reference" or "TPR."  O'Brien Decl. ¶ 52.  For example, the 2018 Pennsylvania Uniform Construction Code incorporates by reference the 2018 International Building Code, a copyrighted work published by International Code Council, Inc. ("ICC"), an SDO.  *Id*.  The text of 2018 International Building Code refers to certain ASTM standards, including ASTM's Copyrighted Works.  *See, e.g.*, Wise Decl. ¶ 12, Ex. 24 (International Building Code ("IBC") 1810.3.2.3 ("Structural steel H-piles and structural steel sheet piling shall conform to the material requirements in ASTM A6. Steel pipe piles shall confirm to the material requirements in A252. Fully welded steel piles shall be fabricated from plates that conform to the material requirements in ASTM A36, ASTM A283, ASTM A588 or ASTM A690.")) As relevant here, ASTM has no control over whether Pennsylvania or ICC refers to ASTM's standards and has not licensed any of the Copyrighted Works to Pennsylvania or ICC. *See* O'Brien Decl. ¶ 52.

ASTM does not lobby or otherwise influence local, state, and federal jurisdictions nor other SDOs to reference its standards.  *Id.* ¶ 53.  Rather, for a variety of reasons, jurisdictions and others see fit to reference ASTM's high-quality standards on their own.  *Id*.

### B.  DEFENDANTS' INFRINGEMENT OF ASTM'S COPYRIGHTED WORKS AND MARK

#### 1.  Defendants' Exploitation of ASTM's Copyrighted Standards

UpCodes, a for-profit corporation, was launched in 2016 by co-founders Scott Reynolds and Garrett Reynolds.  Wise Decl. ¶ 13, Ex. 25.  UpCodes holds itself out as "bring[ing] together the worlds of architecture, engineering, and construction (AEC) with technology" and an "all-in-one compliance and product research platform for AEC professionals."  *Id.* ¶¶ 14-15, Exs. 26-27.  In 2017, Defendants launched a searchable database of building codes based on the copyrighted works of other SDOs beginning with ICC and later, in or around 2020, various other SDOs such as National Fire Protection Association ("NFPA") and Facility Guidelines Institute ("FGI").[4]  *Id.* ¶ 13, Ex. 25.  UpCodes now boasts over 750,000 monthly active users and over 6,000,000 sections of code. *Id.* ¶ 16, Ex. 28.

ASTM is the latest victim of UpCodes' serial infringement.  At least as early as October 2023, Defendants began posting grayed-out titles of ASTM's Copyrighted Works.  Wise Decl. ¶ 17, Ex. 29.  At that time, the grayed-out title icons did not link to any underlying content.  However, in or about April 2024, UpCodes started to display ASTM's Copyrighted Works.  *Id.* ¶ 18, Ex. 30.  UpCodes' library of unauthorized ASTM works has grown day-by-day, and now Defendants have posted 10 ASTM standards ("ASTM's Copyrighted Works")[5] with 9 additional greyed-out ASTM standards that UpCodes appears poised to post any day.  *Id.* ¶¶ 39-40, Exs. 51-52.  In fact, just

---

[4] Both ICC, NFPA and FGI separately filed lawsuits against UpCodes alleging infringement of their copyrighted works.  *See International Code Council v. UpCodes, Inc*., Case No. 1:17-cv-6261 (S.D.N.Y.); *National Fire Protection Association, Inc. v. UpCodes, Inc.,* Case No. 2:21-cv-5262 (C.D. Cal.); *Facility Guidelines Institute, Inc. v. UpCodes, Inc.,* Case No. 4:22-cv-1308 (E.D. Mo.).  ICC's and NFPA's lawsuits remain pending, however, FGI ultimately opted to voluntarily dismiss its case.

[5] The infringing copies of ASTM's Copyrighted Works that Defendants have posted on its website are attached to the Wise Declaration.  Wise Decl. ¶¶ 19-38, Exs. 30-50.

days prior to the filing of this motion for a preliminary injunction, Defendants posted two additional copyrighted works bringing the total number of infringing works from 8 to the current 10. *Id.* ¶ 40, Ex. 52.

Since its inception, UpCodes has sought improperly to capitalize on the investment of SDOs through its use of a "freemium" business model. Wise Decl. ¶ 41, Ex. 53. A "freemium" model allows "users get to use a basic product or service for free, but [they] must pay for a premium version with additional features." Xian Gu, P.K. Kannan, & Liye Ma, *How Companies Can Get the Most Out of a Freemium Business Model,* HARVARD BUSINESS REVIEW (Mar. 20, 2019), https://hbr.org/2019/03/how-companies-can-get-the-most-out-of-a-freemium-business-model. Wise Decl. ¶ 42, Ex. 54. UpCodes provides free access to its "code library" where users can view, copy, and print a significant portion of the 10 ASTM's Copyrighted Works. *Id.* ¶¶ 43-44, Exs. 55-56. For a price, or a free trial period, users can access "premium" features to interact with ASTM's Copyrighted Standards, such as searchable standards, bookmarking, and multi-user collaboration. *Id.* ¶ 45, Ex. 57.

Unlike some of the other content available on the UpCodes Website, UpCodes requires users to create an account to access the content of ASTM's Copyrighted Works. Wise Decl. ¶ 46, Ex. 58. By creating an UpCodes account, users must agree to UpCodes' Terms of Service and Privacy Policy. *Id.* ¶ 47, Ex. 59.

UpCodes presents ASTM's Copyrighted Works as standalone codes, *e.g., "*Pennsylvania Carbon Structural Steel Code." Wise Decl. ¶ 29, Ex. 41. However, Pennsylvania has not IBR'd ASTM's Copyrighted Works. O'Brien Decl. ¶ 54. Instead, UpCodes appears to be relying on Pennsylvania's (and other jurisdictions') IBR of ICC model codes, which in turn refer to ASTM standards in the text. To the best of ASTM's knowledge, no state or locality has IBR'd ASTM's

Copyrighted Works by reference.  *Id.*  Instead, UpCodes apparently relies on the mere reference to the name of ASTM's copyrighted works by third party SDOs to justify the wholesale copying of ASTM's Copyrighted Works. Each of the Copyrighted Works contain portions that are expressly non-mandatory or supplementary, such as explanatory notes, supplementary materials, appendices, and annexes.  *Id.* ¶ 40; *see* Wise Decl. ¶¶ 2-11, Ex. 14-23.  Nevertheless, UpCodes indiscriminately posted the entirety of each of ASTM's Copyrighted Works and does not even limit its copying to the standards' requirements.  Wise Decl. ¶¶ 29-38, Exs. 41-50.

### 2. *Defendants' Removal and/or Alteration of ASTM's Copyright Management Information*

Each of ASTM's Copyrighted Standards includes a copyright notice identifying ASTM as the copyright holder and includes ASTM's address.  O'Brien Decl. ¶ 39; Wise Decl. ¶¶ 2-11, Ex. 14-23.  Apart from providing notice of ASTM's copyright claim in the work, each standard contains contact information for obtaining individual reprints of ASTM's Copyrighted Work as well as where to secure permission rights to copy the standard.  *Id.*  This notice and other copyright management information included in ASTM's Copyrighted Works is not present in Defendants' copies of ASTM's Copyrighted Standards.  *Id.*; *see e.g.,* Wise Decl. ¶¶ 29-38, Exs. 41-50. Defendants know that removal of ASTM's copyright management information makes it far more likely that third parties will be unaware of ASTM's copyrights and the restrictions that ASTM places on the reproduction and use of its standards and is likely to increase the risk of unauthorized copying and other infringement of ASTM's Copyrighted Works.

### 3. *Defendants Infringing Use of ASTM's Mark*

Defendants have created electronic copies of ASTM's Copyrighted Works which bear the ASTM Mark yet have not undergone ASTM's quality control processes nor been approved or otherwise authorized by ASTM.  O'Brien Decl. ¶¶ 55-56.  Defendants identify ASTM as the

publisher of the electronic copies of ASTM's Copyrighted Works on the UpCodes Website even though ASTM is neither the publisher nor source of these inferior copies. *Id.* ¶ 57.



Excerpt from Wise Decl. ¶ 40, Ex. 52. (emphasis and zoom added).

## III.    ARGUMENT

Courts have "the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008)).  "'One of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable noncontested status of the parties.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).

A preliminary injunction is appropriate if a party shows: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharms.*, 369 F.3d at 708 (citing *Allegheny Energy, Inc. v.*

*DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)); *see also Reilly*, 858 F.3d at 176. A district court should attempt to "'balance[] these four . . . factors to determine if an injunction should issue.'" *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 554 (E.D. Pa. 2005) (citing *Am. Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)).

### A.  ASTM IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

#### 1.  *ASTM is likely to succeed on the merits of its copyright claim.*

ASTM is likely to succeed on the merits of its copyright infringement claim because it owns valid copyrights in ASTM's Copyrighted Works, Defendants violated ASTM's exclusive rights, and Defendants' anticipated affirmative defenses are meritless.

To prove likelihood of success on the merits, "'it is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking [injunctive] relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits.'" *FMC Corp.*, 369 F. Supp. 2d at 554-55 (citing *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975)). "'Probability of success implies that the moving party . . . must have a very clear and strong case.'" *Id.* (citation omitted). Here, ASTM has a very clear and strong case for copyright infringement.

A party establishes a claim for copyright infringement by showing (1) ownership of a valid copyright and (2) unauthorized copying of original elements of its work. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (citing *Whelan Assocs. v. Jaslow Dental Lab, Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986)); *see also Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 335 (3d Cir. 2022) ("To succeed, Pyrotechnics must show that (1) it owns a valid copyright and (2) fireTEK copied protected, original elements without authorization.").

13

### i.   ASTM owns valid copyrights in the works.

ASTM is entitled to a presumption of validity and ownership based on its registered copyrights. 17 U.S.C. § 410(c); *see Maduka v. Tropical Naturals, Ltd.*, 409 F. Supp. 3d 337, 354-55 (E.D. Pa. 2019); *Bieg v. Hovnanian Enters., Inc.*, 157 F. Supp. 2d 475, 479 (E.D. Pa. 2001); O'Brien Decl. ¶¶ 29-38, Exs. 2-11.

### a.   Defendants cannot rebut the presumption that ASTM owns valid copyrights in ASTM Copyrighted Works.

In Defendants' litigation with other SDOs, UpCodes has asserted that privately authored standards lose their copyright protection once they are IBR'd by any governmental authority. *See Facility Guidelines Inst., Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955 (E.D. Mo. 2023); *Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021); *Int'l Code Council, Inc. v. UpCodes, Inc.* ("*ICC*"), 2020 WL 2750636 (S.D.N.Y. May 27, 2020). In the present case, __no__ governmental authority has IBR'd ASTM's Copyrighted Works, O'Brien Decl. ¶ 54, and no court has ever held that a third-party reference to a standard can result in the loss of copyright protection or even suggested it is a close call.

Prior to 2020, there was a significant question on which there is a split of authority as to whether privately authored standards that a governmental authority IBR's lose their copyright protection under what is called the "government edicts doctrine." *See Am. Soc'y for Testing & Materials et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 441 (D.C. Cir. 2018) ("leaving for another day the far thornier question of whether standards retain their copyright after they are incorporated by reference into law"); *see also Veeck v. S. Bldg. Code Cong. Int'l Inc.*, 293 F.3d 791, 804-05 (5th Cir. 2002) (*en banc*) ("The copyrighted works do not 'become law' merely because a statute refers to them" but the text of a model code which "serves no other purpose than to become law" entered the public domain when published as "the building codes of Anna and

Savoy, Texas"); *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, 121 F.3d 516, 518-19 (9th Cir. 1997) (holding that IBR does not terminate copyright protection because holding otherwise "would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation"); *CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 74 (2d Cir. 1994) ("We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright."); *Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 736 (1st Cir. 1980) (reversing grant of preliminary injunction but declining to hold BOCA's copyright invalid because "[g]roups such as BOCA serve an important public function; arguably they do a better job than could the state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available").

The Supreme Court resolved this issue in *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255 (2020).  In *Georgia*, the Court explained that under the "government edicts doctrine, *officials empowered to speak with the force of law* cannot be the authors of—and therefore cannot copyright—the works they create in the course of their official duties."  *Id.* at 259 (emphasis added).  Thus, "whatever work that [a] judge or legislator produces in the course of his judicial or legislative duties is not copyrightable."  *Id.* at 276.  On the other hand, the Court also made clear that the government edicts doctrine prohibition on copyright protection does not apply "to works created by government officials (or *private parties*) who lack the authority to make or interpret the law[.]"  *Id.* at 265 (emphasis added).  *But see ICC,* 2020 WL 2750636, at *8, 16 ("Because ICC is a private party that lacks the authority to make or interpret the law, the Government Edicts doctrine is clearly not dispositive of this case" but, nevertheless, finding that "the text of model codes that has been adopted enters the public domain" under *Veeck*).

In any event, all of these cases address the question of whether a privately authored work loses its copyright protection once it is IBR'd by a governmental authority.  As mentioned above, no governmental authority has IBR'd ASTM's Copyrighted Works, and no court has ever held that a TPR to a standard terminates copyright protection in the TPR'd standard.

### ii.   Defendants violate numerous of ASTM's exclusive rights.

Defendants' unauthorized exercise of any one of ASTM's exclusive rights under Section 106 constitutes infringement. *See* 17 U.S.C. § 106. Defendants infringe at least four exclusive rights:

- **Reproduction Right, § 106(1)**: Defendants digitally reproduce large portions of ASTM's Copyrighted Works on the UpCodes Website without a license.  *Compare, e.g.,* ¶¶ 29-38, Exs. 41-50 *with id*. ¶¶ 2-11, Exs. 14-23; *see, e.g., Authors Guild, Inc. v. Google Inc.,* 954 F. Supp. 2d 282, 289 (S.D.N.Y. 2013) (digitally reproducing books violates reproduction rights under § 106(1)), *aff'd*, 804 F.3d 202 (2d Cir. 2015)).

- **Derivative Works Right, § 106(2)**: Defendants recast ASTM's Copyrighted Works into different formats, including through compilations of chapters and text with user annotations created on the UpCodes site, infringing ASTM's exclusive right under § 106(2) to create derivative works.  *Compare, e.g.,* Wise Decl. ¶ 2, Ex. 14 *with id.* ¶ 29, Ex. 41; *see also* 17 U.S.C. § 101 ("derivative work" includes any form in which a work "may be recast, transformed, or adapted").

- **Distribution Right, § 106(3)**: Defendants distribute ASTM's Copyrighted Works by uploading them to the site where UpCodes' users download, print, and further distribute copies.  Wise Decl. ¶¶ 43-44, Exs. 55-56.

16

- **Public Display Right, § 106(5)**: Defendants' online display of the ASTM Copyrighted Works infringes ASTM's exclusive right of public display. [cite screenshot]; *see Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 635 (E.D. Pa. 2007) (under the "expansive definition of public display," the display of copyrighted works on computers constitutes a public display); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F. Supp. 2d 321, 332 (D.N.J. 2002), *aff'd* 342 F.3d 191 (3d Cir. 2003) (providing clip previews online constitutes a public display).

Defendants' *prima facie* liability for infringement is clear.

### iii.   Defendants' anticipated affirmative defenses are meritless.

In response to prior copyright infringement claims by other SDOs, Defendants have alleged the affirmative defenses of fair use and merger. *See, e.g.*, *NFPA v. UpCodes,* Case No. 2:21-cv-05262 at Dkt. No. 21; *Int'l Code Council*, No. 1:17-cv-6261 at Dkt. No. 20. Ultimately, Defendants must prove that their affirmative defenses would undermine ASTM's established likelihood of success on its copyright claims. *See Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) ("'the burdens at the preliminary injunctions stage track the burdens at trial,'") (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, (2006)); *FMC Corp.*, 369 F. Supp. 2d at 553 ("CSI raises many affirmative defenses to FMC's establishment of a *prima facie* case of copyright infringement. On the record established thus far, however, none of these affirmative defenses is so persuasive as to undermine what appears as FMC's likely success with its claim."). While Defendants will ultimately bear the burden on these affirmative defenses, ASTM nevertheless sets forth why they will not be able to meet that burden with respect to fair use and merger.

17

a.  **Defendants cannot show their affirmative defense of fair use is likely to succeed.**

Copyright fair use asks Courts to analyze four statutory factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 198-201 (3d Cir. 2003).

Regarding the first factor, Defendants' use is obviously commercial.  "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying."  *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 598 U.S. 508, 532-33 (2023).  The "central question" is whether the defendant's use "supersedes the objects of the original" and thus serves as a substitute—"copyright's bête noire."  *Id.* at 528 (cleaned up). UpCodes is a for-profit company that reproduces, displays, distributes, and creates derivative versions of ASTM's Copyrighted Works for its own financial gain and an identical purpose.  Both ASTM and UpCodes offer the standards, and tools based on those standards, to AEC professionals. O'Brien Decl. ¶ 50.

Defendants' use also is not transformative.  Courts must analyze the defendant's claim of transformation "in the context of the specific use at issue."  *Warhol*, 598 U.S. at 545.  A transformative use adds "something new, with a further purpose or different character, altering the first [work] with new expression, meaning, or message."  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994).  Defendants do no such thing.  They "'merely repackage[] [and] republish[] the original,'" conduct that "is unlikely to be deemed a fair use."  *Fox News Network, LLC v.*

*TVEyes, Inc.,* 883 F.3d 169, 177 (2d Cir. 2018) (citation omitted).  Fundamentally, Defendants'

use is for the same purpose as ASTM's—providing the information to AEC professionals—which

seriously weakens a claimed fair use.  *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307-

08 (3d Cir. 2011) (appropriating an image for the "same purpose" as plaintiff is "far from

transformative"); *TD Bank N.A. v. Hill*, 2015 WL 4523570 at *7 (D.N.J. July 27, 2015) (finding

"in instances where the use made is for the same purpose that the copyright holder intended his

audience to use or enjoy the work, fair use would not be found"); *Worldwide Church of God v.

Phila. Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) (citation omitted) (finding where

a use is "for the same intrinsic purpose as [the copyright holder's] . . . such use seriously weakens

a claimed fair use.").

Defendants are likely to rely on *ASTM et al. v. Public.Resource.Org, Inc*., 896 F.3d 437,

450 (D.C. Cir. 2018), to argue that the first factor favors them, but even that outlier decision

suggests otherwise on these facts.  In that decision, the D.C. Circuit suggested that, in certain

circumstances, "[the first] factor would weigh heavily in favor of permitting a *nonprofit* seeking

to inform the public about the law to reproduce in full the relevant portions of that particular

standard."  *ASTM,* 896 F.3d at 450.  UpCodes, however, is a *for-profit company* that uses ASTM's

Copyrighted Works to upsell users to its paid premium service—not in furtherance of a charitable

charter.  *See Warhol*, 598 U.S. at 509 ("the degree of difference must be weighed against other

considerations, like commercialism.").  And UpCodes copies and distributes ASTM standards that

are *not* "essential to complying with any legal duty," *ASTM*, 896 F.3d at 450, because no

governmental authority has IBR'd ASTM's Copyrighted Works, and portions of each of the

ASTM's Copyrighted Works that Defendants have copied are expressly non-mandatory or

supplementary and do not impose any duty under any circumstance.  O'Brien Decl. ¶¶ 40, 54; *see* Wise Decl. ¶¶ 29-38, Exs. 41-50.

The second factor is "the nature of the copyrighted work."  17 U.S.C. § 107.  This factor asks whether the work at issue is "close[] to the core of intended copyright protection[.]" *Campbell*, 510 U.S. at 586.  While this factor also weighs against a finding of fair use, it is of limited relevance. *Warren Publ'g Co. v. Spurlock*, 645 F. Supp. 2d 402, 428 (E.D. Pa. 2009). Here, because ASTM's Copyrighted Works are original and complex works that take a high degree of resources to produce, and because providing an incentive for ASTM to develop and publish these works is manifestly in the public interest, these works are at the core of copyright law, and so this factor weighs in ASTM's favor. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("It is evident that the monopoly granted by copyright actively served its intended purpose of inducing the creation of new material of potential historical value.").  Even if Defendants argue that this factor favors fair use when a governmental authority has IBR'd a work—which ASTM disputes—no governmental authority has IBR'd any of the ASTM Copyrighted Works.  O'Brien Decl. ¶ 54.  This factor therefore does not favor fair use. *See Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.,* 597 F. Supp. 3d 213, 420 (D.D.C. 2022), *aff'd*, 82 F.4th 1262 (D.C. Cir. 2023) ("Standards not incorporated into law, though factual works, fall more squarely within the realm of copyright protection.")

The third factor is "the amount and substantiality of the work taken."  17 U.S.C. § 107. "The Supreme Court has explained that 'the extent of permissible copying varies with the purpose and character of the use' and characterized the relevant inquiry as whether 'the amount and substantiality of the portion used['] ... are reasonable in relation to the purpose of the copying.'" *ASTM*, 896 F.3d at 452 (quoting *Campbell*, 510 U.S. at 586–87 (quoting 17 U.S.C. § 107(3))).

"[F]air use generally is not a defense if an entire work is reproduced." *FMC Corp.*, 369 F. Supp. 2d at 580 (citations omitted); *see also Murphy*, 650 F.3d at 309 (holding the third factor weighed against a finding of fair use because the "[d]efendants copied the Image in its entirety"); *Worldwide Church of God*, 227 F.3d at 1118 ("[C]opying an entire work 'militates against a finding of fair use.'").

Here, Defendants' wholesale reproduction of ASTM's Copyrighted Works must be examined in light of its commercial motivation. *Cf. ASTM*, 896 F.3d at 452 ("PRO's copying must be considered standard by standard in light of its purpose of informing the public about the specific incorporation at issue."). This factor weighs in ASTM's favor. Defendants' objective is to attract traffic to the UpCodes Website by providing free access to ASTM's Copyrighted Works and to then upsell premium services to those visitors. Defendants are copying and posting the entirety of ASTM's Copyrighted Works—excepting the copyright notices. O'Brien Decl. ¶ 39; *compare* Wise Decl. ¶¶ 29-38, Exs. 41-50 *with id.* ¶¶ 2-11, Exs. 14-23. "[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row*, 471 U.S. at 565.

Even in the context of determining whether a non-profit organization's posting of IBR'd works in furtherance of its purpose of educating the public about the specifics of the law would be "fair use," the court in *ASTM* made clear that the defendant must "limit[] its copying to only what is required to fairly describe the standard's legal import." 896 F.3d at 452. The *ASTM* court contemplated that "where the incorporation merely makes reference to an external standard, but that standard does not govern any conduct, perhaps the copier's purpose could be achieved with only a paraphrase or a summary." *Id.* Here, not only do Defendants serve a competitive and

21

substitutional purpose rather than an educational one, Defendants also do not limit their copying to material that describes a standard's legal import. Rather, they reproduce, distribute, and display expressly "Nonmandatory Information" portions of ASTM's Copyrighted Works that impose no binding legal duties as shown in the example below. O'Brien Decl. ¶ 40; *see e.g.,* Wise Decl. ¶ 30, Ex. 42 (excerpted below with emphasis added).



Further, ASTM's Copyrighted Works are merely referenced in other privately authored works—they have not been IBR'd by any jurisdiction. O'Brien Decl. ¶ 54; *see, e.g,* Wise Decl. ¶ 12, Ex. 24. In light of Defendants' copying and distribution of the entirety of ASTM's Copyrighted Works which "do[] not govern any conduct" by virtue of a TPR and which contain explicitly non-mandatory content, this factor too weighs against fair use. *See ASTM*, 896 F.3d at 452.

Finally, the fourth factor is the effect of the defendant's use on the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Defendants' use poses significant direct and indirect market harm to ASTM's Copyrighted Works. Market harm flows, first, from Defendants' usurpation of ASTM's markets for the sale of physical copies and subscriptions to access its standards. UpCodes' online offerings contain the entirety of the standards' substantive chapters and thus "serve as a market substitute for the original." *Campbell,* 510 U.S. at 587. Even the district court in the *ICC* case, which sided with UpCodes as to the first three factors, acknowledged that it was "fair to say" that UpCodes' posting was "an effective substitute for" the plaintiff's works. *ICC,* 2020 WL 2750636, at *28.

Moreover, under the fourth factor, the Court must consider not only Defendants' appropriation of ASTM's Copyrighted Works, but "'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell,* 510 U.S. at 590 (citations omitted).  There is no question that if anyone could do what Defendants are doing, the market for ASTM's Copyrighted Works would be destroyed.  *See* O'Brien Decl. ¶ 47.  This "impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them."  *Capitol Records, LLC v. ReDigi Inc.,* 910 F.3d 649, 662 (2d Cir. 2018); s*ee also Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory,* 689 F.3d 29, 65 (1st Cir. 2012) ("If anyone could freely access the Works . . . the Monastery would have no market in which to try and publish, disseminate, or sell its [works]. . . . Thus, the Monastery's [works] (which the Archbishop does not contest were expensive to create) would have been toiled over, with no possible market in which to reap the fruits of its labor.").

In sum, Defendants cannot show a likelihood of prevailing on fair use.

> **b.  Defendants cannot show their affirmative defense of merger is likely to succeed.**

Defendants also are likely to raise the affirmative defense of merger, but that defense is also baseless.  "[M]erger occurs where there is only one or a limited number of ways of expressing a certain idea, so that copyright protection of the expression would necessarily result in copyright protection of the idea itself."  *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 512 (E.D. Pa. 2005).  Courts only find merger when "'there are no or few other ways of expressing a particular idea.'"  *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 222 (3d Cir. 2019) (citing *Educ. Testing Servs. v. Katzman*, 793 F. 2d 533, 539 (3d Cir. 1986)).  "Notably, merger is most applicable where the idea and the expression are of items found in nature, or are found commonly

23

in everyday life.  But if copyright does not foreclose other methods of expressing [an] idea . . . as a practical matter, then there is no merger."  *Id.* (citations omitted).

There are countless ways to express the ideas set forth in ASTM's Copyrighted Works and any other standards, and maintaining ASTM's copyright protection in those works will not prevent any party from developing competing standards.  This is the precise reason why the Ninth Circuit rejected a similar merger defense in *Practice Management*, and any attempt by Defendants to justify their unauthorized copying based on merger should similarly be rejected here.  *Practice Mgmt.,* 121 F.3d at 520 n.8 (because AMA's copyright did not "stifle independent creative expression in the medical coding industry," it did not prevent the plaintiff or AMA's competitors from developing competing coding systems but "simply prevent[ed] wholesale copying of an existing system.").

### 2.   ASTM is likely to succeed on its trademark claims.

To succeed on the merits of its Lanham Act claims, ASTM "must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  Unfair competition claims under the Lanham Act and common law infringement claims are subject to the same standard.  *Theia Techs. LLC v. Theia Grp., Inc,* 2021 WL 291313, at *21 (E.D. Pa. Jan. 28, 2021) (citing *First Am. Mktg. Corp. v. Canella*, 2004 WL 250537, at *2 (E.D. Pa. Jan. 26, 2004)).

"An incontestable trademark [] satisfies the first two prongs of a trademark infringement claim." *Theia Techs.,* 2021 WL 291313, at *21.  ASTM owns the incontestable, federally registered ASTM Mark (Reg. No. 2,679,320) for use in connection with goods and services in Classes 16, 35, 41, and 42 and therefore is able to satisfy the first two elements of its trademark claims.  O'Brien Decl. ¶ 48, Ex. 13.

As to the third element, Defendants are offering for sale premium services and access to electronic copies of ASTM's Copyrighted Works bearing the identical ASTM Mark even though Defendants' inferior versions are not authorized, sponsored, or affiliated with ASTM.  *See* O'Brien Decl. ¶¶ 55-56, 58.  Where, as is here, the parties "are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves." *A & H Sportswear,* 237 F.3d at 214.  There is no need to assess each of the *Lapp* factors[6] to assess likelihood of confusion as UpCodes competes directly with ASTM by targeting AEC professionals with premium services built on ASTM's Copyrighted Works, O'Brien Decl. 50; Wise Decl. ¶¶ 14-15, Exs. 26-27, and using ASTM's exact trademark.  *Darius Int'l, Inc. v. Young,* 2006 WL 1071655, at *26 (E.D. Pa. Apr. 20, 2006); *Richardson v. Cascade Skating Rink*, 2022 WL 833319, at *3 (D.N.J. Mar. 21, 2022) (collecting cases).  Given Defendants' use of identical marks for competing services alone, ASTM is likely to succeed on the element of likelihood of confusion and as a result, is likely to succeed on its trademark infringement claims (Counts IV-VII).

---

[6] The Third Circuit "has adopted a nonexhaustive list of factors to consider in evaluating likelihood of confusion, commonly referred to as the '*Lapp* factors.'"  *Kos Pharms.*, 369 F.3d at 709. (citing *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir.1983)).  Those factors are: "'(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.'"  *Id.* (quoting *A & H Sportswear,* 237 F.3d at 215).

## B. ASTM WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.

"'[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Rigby v. Jennings*, 630 F. Supp. 3d 602, 618 (D. Del. 2022) (citing *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)).

### 1. ASTM will suffer irreparable harm unless Defendants are preliminarily enjoined from infringing ASTM's Copyrighted Works.

"Although a *prima facie* case for copyright infringement, alone, does not create a presumption of irreparable injury, 'irreparable harm may be based on past and future infringement' if a plaintiff can demonstrate a threat of future infringement beyond mere conclusory allegations." *Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 769 (D.N.J. 2018), *aff'd*, 931 F.3d 215 (3d Cir. 2019) (citations omitted). Not only are there currently 10 infringing works on the UpCodes Website, but Defendants appear poised to imminently post 9 additional ASTM works given the appearance of those titles on the UpCodes Website in a grayed-out form. Wise Decl. ¶ 40, Ex. 52. Prior to their improper posting on the UpCodes Website, the now live infringing copies of ASTM's Copyrighted Works appeared in a similar grayed out form. *Id.* ¶¶ 17-18, Exs. 29-30.

Even without the presumption of irreparable harm…, the jeopardy to ASTM's investment and competitive position caused by UpCodes' wholesale copying of its standards would satisfy the requirement of irreparable harm. *See Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) *abrogated on other grounds by TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019); *see also BGSD, Inc. v. SpazeUp, LLC*, 2024 WL 1619279, at *6 (E.D. Pa. Apr. 15, 2024) (post-*TD Bank* finding continuing nature of infringement suggestive of irreparable harm).

Defendants' decision to exploit ASTM's Copyrighted Works without seeking a license upends the status quo.  Defendants know that ASTM owns the copyright in its standards.[7]  They *could have* sought a license or declaratory judgment before wholesale posting ASTM's standards, but they did not.  Defendants should not benefit from their "ask forgiveness rather than permission" strategy.  If not enjoined during the pendency of this litigation, Defendants' conduct threatens ASTM with several recognized forms of irreparable harm as set forth below.

First, Defendants are interfering with and threatening the success of ASTM's market for its subscription service, ASTM Compass.  O'Brien Decl. ¶¶ 45-46, Ex. 12; *id.* ¶ 54; *see Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274-75 (D.D.C. 2015) ("losses to… customer base and reputation defy attempts at valuation[] and are unlikely to be remedied through a simple damages calculation" (citations omitted)).  The AEC industry is a substantial market for ASTM, and ASTM has historically derived a portion of its revenues from licensing and sales to members of the AEC community.  O'Brien Decl. ¶ 50.  UpCodes offers nearly identical content and features as ASTM but competes on unfair terms because it has not had to bear the costs of developing the standards.  UpCodes makes ASTM's content available for printing, download, and re-distribution for *free*, a price with which ASTM cannot compete.  O'Brien Decl. ¶ 47.

If AEC professionals are led to believe that UpCodes is a legitimate alternative to ASTM Compass, ASTM are likely to lose both existing and potential subscribers.  *See* O'Brien Decl. ¶¶ 57-58; *see Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011) (defendants' service threatened "to create incorrect but lasting impressions with consumers about

---

[7] UpCodes has been involved in copyright litigation against other SDOs since 2017 and has closely followed litigation involving ASTM and disputes concerning the unfettered wholesale copying of ASTM's standards. *See Int'l Code Council*, No. 1:17-cv-6261 (S.D.N.Y).

what constitute[d] lawful video on demand exploitation" of copyrighted works); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007) ("[l]oss of market share in this nascent market" is irreparable (citation omitted) (alteration in original)); *see also Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion."); *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96-97 (2d Cir. 2002) (sale of competing prayer books to same market of synagogue customers would result in irreparable harm).

Relatedly, Defendants threaten the value of ASTM's licensing market and its goodwill and relationship with licensees.  O'Brien Decl. ¶¶ 58-59.  UpCodes' offerings threaten ASTM's licensees' business and strain ASTM's relationships with its licensees.  *Id*.  Obviously, if Defendants are permitted to reproduce ASTM's standards for commercial purposes without a license, then ASTM's licensees are likely to be reluctant to continue to pay ASTM for a license. Courts have repeatedly held that harm to licensing relationships is irreparable.  *22nd Century Techs., Inc. v. iLabs, Inc.*, 2023 WL 3409063, at *7 (3d Cir. May 12, 2023) (harm to client relationships satisfies the irreparable harm requirement); *Coventry First, LLC v. Ingrassia*, 2005 WL 1625042, at *11 (E.D. Pa. July 11, 2005) ("Pennsylvania courts have indicated that interference with customer relationships satisfies the irreparable harm requirement."); *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) *abrogated on other grounds by ADP, LLC v. Rafferty*, 923 F.3d 113 (3d Cir. 2019) (interference with customer relationships may be the basis for a finding of irreparable harm); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) (irreparable harm was clear when revenues from licensing market at issue had "become increasingly important to the . . . industry,

and are used to fund the development and acquisition of [new Works]" and the allegedly infringing service "threaten[ed] to damage Plaintiffs' ability to negotiate favorable [licenses]").

Second, Defendants' infringement threatens ASTM's ability to invest in creating and updating standards and thus its contribution to overall public safety. O'Brien Decl. ¶¶ 43-47. This type of incalculable harm merits injunctive relief. *See Salinger*, 607 F.3d at 81 ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer.").

Finally, preliminary injunctive relief is necessary here because everyone who has prints or downloads a copy of ASTM's standards from the UpCodes Website can become an entirely new engine of unrestricted distribution. *See MGM*, 518 F. Supp. 2d at 1218 ("virtually unstoppable" threat of future copyright infringement for downloaded works (citation omitted)). When infringement is allowed to continue unchecked, a copyright owner essentially loses control of its intellectual property. Courts have found that this loss of control due to rampant infringement is irreparable—especially in an online environment where an infringing file can be shared ad nauseam with other users, thus compounding the harm. *See id.* ("When digital works are distributed via the internet…, every downloader who receives one of the copyrighted works… is in turn capable of also transmitting perfect copies of the works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright."); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204-05 (3d Cir. 2014) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378-79 (3d Cir. 1992)); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 712 (D. Md.

2012) *aff'd*, 722 F.3d 591 (4th Cir. 2013) (plaintiff "demonstrated that its loss of exclusive control over its copyrighted content is likely to lead to irreparable harm").

### 2. *Defendants cannot rebut the presumption that ASTM will suffer irreparable harm unless Defendants are enjoined from infringing the ASTM Mark.*

The Lanham Act creates a presumption of irreparable harm for trademark infringement and unfair competition upon a finding of likelihood of success on the merits.  15 U.S.C. § 1116(a).  "'Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.'"  *Kos Pharms.*, 369 F.3d at 726 (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)).  "Lack of control over one's mark 'creates the *potential* for damage to … reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'"  *Id.* (quoting *Opticians Ass'n*, 920 F.2d at 196).  The risk of irreparable harm is so significant with misuse of a trademark, that the Lanham Act was amended in 2020 to restore the presumption of irreparable harm upon a finding of likelihood of success on the merits.

Defendants' continued use of ASTM's Mark on unauthorized electronic copies jeopardizes ASTM's hard-earned reputation and consumer trust.  O'Brien Decl. ¶¶ 49, 58.  The likelihood of irreparable harm is not merely theoretical. Paramount among these concerns is the threat to public safety caused by the improper association of safety-related codes with ASTM that have not undergone ASTM's quality control processes.  *Id.* ¶¶ 56, 58.  Any mistakes that Defendants introduce in their versions of ASTM's Copyrighted Works could implicate public safety, which in turn would harm ASTM's reputation as it would be wrongfully attributed to ASTM by virtue of Defendants' use of the identical ASTM Mark, claiming ASTM, not Defendants, created the versions published on the UpCodes Website.  *Id*.  Additionally, Defendants' unauthorized use of

the ASTM Mark deprives ASTM the ability to control the use of its trademark, including the loss of control over brand identity, goodwill, and reputation. *Id.; Groupe SEB*, 774 F.3d at 204-05.

### 3.  ASTM will suffer irreparable harm by virtue of Defendants' repeated intellectual property infringement and inability to satisfy a judgment.

ASTM's right to exclude others from use of its Copyrighted Works and trademark is one of the fundamental tenets of intellectual property law.  Repeated infringement threatens that right and justifies an injunction. *Breaking the Chain Found. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 30 (D.D.C. 2008) ("Defendant's continuing disregard for Plaintiff's rights demonstrates that it will continue to infringe on Plaintiff's rights, absent an injunction. This finding further justifies granting Plaintiff's request for a permanent injunction."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 504 (2d Cir. 2014) ("'[T]he critical question for a district court in deciding whether to issue a permanent injunction… is whether there is a reasonable likelihood that the wrong will be repeated.'" (citations omitted)); *cf. Int'l Code Council, Inc. v. UpCodes, Inc.*, No. 17 CIV. 6261 (VM), 2020 WL 2750636, at *18 (S.D.N.Y. May 27, 2020) (holding that UpCodes has made "rather surprising oversights, such as erroneously indicating that the landlocked state adopted an appendix focusing on tsunami-generated flood hazards.").

Finally, Defendants are financially unlikely to be able to satisfy a judgment. UpCodes is a startup company that is still actively engaged in fundraising to operate and expand its business. UpCodes owners claimed that as recently as 2020, they "used their savings to start UpCodes," slept on an "airbed," Wise Decl. ¶ 48, Ex. 60 (*Int'l Code Council*, No. 17 CIV. 6261, Dkt. 92-33 ¶¶ 6-7), and "share[d] a studio apartment to cut their expenses and did not pay themselves a salary until over a year after founding UpCodes." *Int'l Code Council*, No. 17 CIV. 6261 (VM), 2020 WL 2750636, at *31 (S.D.N.Y. May 27, 2020).  Since then, UpCodes has been embroiled in multiple litigations in multiple district courts concerning their widespread copyright infringement,

presumably incurring substantial legal fees. *See, e.g.*, Wise Decl. ¶ 49, Ex. 61 (fee motion from Morrison & Foerster LLP, law firm representing UpCodes, with rates). Defendants' unstable financial position favors finding irreparable harm, because money damages would be inadequate assuming Defendants remain unable to pay a judgment. *See Eli Lilly and Co. v. Premo Pharm. Lab'ys, Inc.*, 630 F.2d 120, 137 (3d Cir. 1980) (affirming district court's finding of irreparable harm where "'damages could very conceivably run beyond [defendant]'s ability to pay them'"); *Symbol Techs., Inc. v. Janam Techs. LLC*, 729 F. Supp. 2d 646, 665 (D. Del. 2010) (evidence that a business was not sufficiently capitalized to be able to pay the predicted damages award weighed in favor of finding irreparable harm); *Novartis Corp. v. Teva Pharms. USA, Inc.*, 2007 WL 1695689, at *26-28 (D.N.J. June 11, 2007) (ability to pay considered in the irreparable harm analysis).

### C. THE BALANCE OF HARDSHIPS DECISIVELY FAVORS ASTM.

In contrast to the significant and irreparable harm that Defendants' unfettered copying of ASTM's Copyrighted Work and confusing use of the ASTM Mark pose to ASTM and its licensing partners, Defendants bear no cognizable harm. UpCodes only began appropriating ASTM's Copyrighted Works and the ASTM Mark a few weeks ago. *See, e.g.,* Wise Decl. ¶ 18, Ex. 30. Prior to that, it used grayed-out icons to show that the works were "coming soon" since at least October 2023. Wise Decl. ¶ 17, Ex. 29. As a result, there is years of data showing that UpCodes can continue to operate its business without posting ASTM's standards. Even if UpCodes claimed to lose sales as a result of a preliminary injunction, an infringer cannot complain about the loss of ability to sell or distribute its infringing products. *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 332 (E.D. Pa. 2012) (citing *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011) and *Apple Comput.*, 714 F.2d at 1255)).

### D.  A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST.

ASTM's standards are devoted to issues of great importance to the public, such as the safety of building materials used in the construction of bridges, buildings, and ships.  The public interest is served by protecting financial incentives for the continued creation of standards and the resulting beneficial public-private system in place in the United States.  *See CCC*, 44 F.3d at 66 (a policy "embodied into [copyright] law is to encourage authors to publish innovations for the common good"); *Apple Comput.*, 714 F.2d at 1255 ("it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." (citing *Klitzner Indus. v. H. K. James & Co.*, 535 F. Supp. 1249, 1259-60 (E.D. Pa. 1983)).

Additionally, "[i]n a trademark case, the public has an interest in not being 'deceived or confused.'"  *Theia Techs. LLC,* 2021 WL 291313, at *33 (quoting *Opticians Ass'n*, 920 F.2d at 197).  "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

The public interest favors entry of a preliminary injunction.

### IV.    CONCLUSION

For the foregoing reasons, ASTM is entitled to the injunctive relief it seeks.

Dated: May 3, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*

**DLA PIPER LLP (US)**
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (*pro hac vice* motion
forthcoming)
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@dlapiper.com
jane.wise@dlapiper.com

Gabrielle C. Velkes (*pro hac vice* motion
forthcoming)
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff American Society for
Testing and Materials d/b/a ASTM International*