# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN SOCIETY FOR TESTING
AND MATERIALS d/b/a ASTM
INTERNATIONAL,

        Plaintiff,

    v.

UPCODES, INC.; GARRETT
REYNOLDS; and SCOTT REYNOLDS,

        Defendant.

Case No. 2:24-cv-01895-AB

**AMICUS BRIEF OF ELECTRONIC FRONTIER FOUNDATION, IFIXIT, INC., AND PUBLIC KNOWLEDGE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

CORPORATE DISCLOSURE ...................................................................1

STATEMENT OF INTEREST ................................................................1

INTRODUCTION ................................................................................2

    I.    In a Democracy, the Public Must Have An Unfettered Ability to Read and Speak the Law ................................................................4

    II.    Copyright Claims in Standards Incorporated by Reference Into Law Are Categorically Unenforceable.............................................7

        A.    The Government Edicts Doctrine Forbids Copyright Restriction on Law.......................................................................7

        B.    The Government Edicts Doctrine Encompasses Laws Incorporated by Reference. .......................................................9

        C.    The Plain Text of the Copyright Act and the Merger Doctrine Also Exclude Standards Incorporated into Law. ......................11

        D.    The Public Needs Equal Access to All Standards Necessary to Comprehend Legal Obligations ................................................14

    III.    Publication of Incorporated Standards Serves the Public Interest and the Purposes of Copyright ................................................14

CONCLUSION ................................................................................18

CERTIFICATE OF SERVICE ...........................................................20

# TABLE OF AUTHORITIES

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ............................................................................5

*ASTM v. Public.Resource.Org*,
  896 F.3d 437 (D.C. Cir. 2018) ................................................... 13, 14

*ASTM v. Public.Resource.Org.*,
  82 F.4th 1262 (2023) .........................................................................15

*Banks v. Manchester*,
  128 U.S. 244 (1888) ............................................................................8

*Bellwether Props., LLC, v. Duke Energy Indiana, Inc.*,
  87 N.E.3d 462 (Ind. 2017)............................................................ 15, 16

*Building Officials & Code Administration v. Code Technology, Inc*
  628 F.2d 730, 736 (1st Cir. 1980) .......................................................7

*Cambridge Univ. Press v. Patton*,
  769 F.3d 1232 (11th Cir. 2014).........................................................17

*Campbell v. Acuff-Rose Music, Inc.*,
  U.S. 569 (1994) .................................................................................15

*Canadian Standards Association v. PS Knight Co., Ltd.*,
  -- F.4th -- , 2024 WL 3418717 (5th Cir. July 16, 2024) ............... 10, 11

*Computer Associates Int'l v. Altai, Inc.*,
  F.2d 693 (2d. Cir. 1992) ...................................................................12

*Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.*,
  843 F.2d 600 (1st Cir. 1988) .............................................................12

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003). .........................................................................11

*First Nat'l Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978) ............................................................................4

*Georgia v. Public.Resource.Org, Inc.*,
  590 U.S. 255 (2020) ..................................................................... *passim*

*Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*,
  F.3d 312 (1st Cir. 2004) ...................................................................16

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*,
  457 U.S. 596 (1982) .........................................................................5

*Google LLC v. Oracle America, Inc.*,
  593 U.S. 1 (2021) ...................................................................... 15, 17

*Howell v. Miller*,
  91 F. 129 (6th Cir. 1898) ..................................................................8

*International Code Council, Inc. v. Upcodes*,
  2020 WL 2750636, 21 (S.D.N.Y May 27, 2020)................................12

*Kern River Gas Transmission Co. v. Coastal Corp.*,
  899 F.2d 1458 (5th Cir. 1990)..........................................................13

*Mills v. Alabama*,
  384 U.S. 214 (1966) .........................................................................5

*Nash v. Lathrop*,
  142 Mass 29 (Mass. 1886)................................................................9

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
  293 F.3d 791 (5th Cir. 2002) .............................................. 10, 11, 17

*Wheaton v. Peters*,
  33 U.S. (8 Pet.) 591 (1834).......................................................... 3, 8, 9

**Statutes**

17 U.S.C. §102(b) ...............................................................................11

The Federal Register Act (Pub. L. No. 74-220, ch. 417Stat. 500-503 (July 26,
  1935))..............................................................................................4

**Other Authorities**

"Law," Legal Info. Inst., Cornell L. Sch..............................................11

Amicus Br. of Am. Fed'n of State, Cnty. & Mun. Emps.,
  *ASTM v. PublicResource.Org*, 82 F.4th 1262 (2023) ..........................6

Amicus Br. of Library Futures Inst. et al.,
  *ASTM v. PublicResource.Org*, 82 F.4th 1262 (2023) ..........................6

Amicus Br. of NAACP,
  *ASTM v. PublicResource.Org*, 82 F.4th 1262 (2023) .............................................7

Amicus Br. of Rptrs. Comm. for Freedom of the Press et al.,
  *ASTM v. Public.Resource.Org*, 82 F.4th 1262 (2023) (No. 22-7063) ..................6

Amicus Br. of United States,
  *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, 539 U.S. 969 (2003) (No. 02-355)......10

Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175
  (1989)...............................................................................................................4

*Environmental Training*, ASTM Int'l.......................................................................18

Erwin N. Griswold, *Governance in Ignorance of the Law: A Plea for Better
  Publication of Executive Legislation*, 48 Harv. L. Rev. 198 (1934)......................4

Jodi L. Short, *The Political Turn in American Administrative Law: Power,
  Rationality, and Reasons*, 61 Duke L.J. 1811 (2012) ............................................5

K. Kindy, *In Trump era, lobbyists boldly take credit for writing a bill to protect
  their industry*, Washington Post (July 31, 2017)....................................................9

L. Ray Patterson & Craig Joyce, *Monopolizing the Law: The Scope of Copyright
  Protection for Law Reports and Statutory Compilations*, 36 UCLA L. Rev. 719
  (1989)...............................................................................................................12

Nina A. Mendelson, *Private Control Over Access to Public Law: The Perplexing
  Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737 (2014).....6

*Oil Suit Dismissed in Supreme Court*, N.Y. Times, Oct. 2, 1934 ............................4

*Privacy Policy*, ASTM Int'l.......................................................................................17

*Reading Room*, ASTM Int'l.......................................................................................17

Victoria F. Nourse & Jane S. Schachter, *The Politics of Legislative Drafting: A
  Congressional Case Study,* 77 N.Y.U. L. Rev. 575 (2002) ...................................9

## CORPORATE DISCLOSURE

*Amici Curiae* Electronic Frontier Foundation, iFixit, Inc., and Public Knowledge state that they do not have parent corporations and that no publicly held corporation owns 10 percent or more of their stock.

## STATEMENT OF INTEREST

EFF is a member-supported, nonprofit civil liberties organization that has worked for more than 30 years to protect free expression, access to knowledge, and innovation. EFF and its more than 30,000 members have a strong interest in a copyright system that benefits the public by balancing copyright incentives against countervailing constitutional interests. Consistent with this mission, EFF provides pro bono legal services in matters implicating digital rights. Most notably here, EFF was lead counsel for defendant Public Resource in *ASTM v. Public.Resource.Org.* EFF also frequently appears as *amicus curiae* in novel copyright cases, provides free legal counseling on copyright issues, and advocates for balanced copyright policy in legislative and regulatory fora.

iFixit, Inc. ("iFixit") is the world's largest free repair manual, with 109,029 step-by-step guides as of July 2024, for everything from toasters to tractors, many of them consisting of complicated electronics. These devices are governed by thousands of standards, and being able to understand the mandatory standards for the safety of electronic devices is important to repair professionals and enthusiasts

worldwide. iFixit has also been directly involved in standards development, in keeping with its mission to make products more repairable and recyclable. Wider access to these standards increases the potential adoption of repairability best practices, which could reduce waste, limit unnecessary manufacturing, and benefit consumers worldwide through lower repair costs and greater repair availability.

Public Knowledge is a consumer rights organization that defends the rights of internet users, as well as libraries, archives, and cultural institutions, including their ability to freely access the law and other public materials. Public Knowledge promotes balanced intellectual property policies that promote the public interest by ensuring that the rights granted to authors and other creators are balanced with the public's need to access information.

## **<u>INTRODUCTION</u>**

A nation governed by the rule of law should not tolerate private control of that law. That is why multiple courts have held that copyright cannot be used to restrict the public's ability to speak and share the law.  It would be sadly ironic if, as Plaintiff ASTM contends, the only exception to this rule were a set of laws that directly affects our everyday lives: the codes that ensure our homes, workplaces, devices, and many other products are safe and fit for their purpose.

No such exception exists. *Amici* urge the Court to find that ASTM is unlikely to prevail on its copyright claims, for two separate reasons.[1]

First, standards incorporated into law are ineligible for copyright protection, following a consistent thread from the very first Supreme Court copyright decision, *Wheaton v. Peters*, through its recent guidance in *Georgia v. Public.Resource.Org.*; the reasoning of two circuit court decisions that have directly addressed this question; and the Copyright Act. A ruling on this basis would foster legal certainty, rather than requiring those who wish to speak the law to "roll the dice with a potential fair use defense," which may cause the "less bold among us" to "think twice before using official legal works." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 275 (2020).

Second, if this Court concludes that UpCodes must roll the dice, the odds should weigh heavily in its favor. *Amici* will not recapitulate the fair use analysis already found in UpCodes' briefing but urge the Court to give careful consideration to the purposes of copyright and the public interest in full access to the law when evaluating fair use.

*Amici* urge this Court to join sister courts around the nation in declining to allow any private party to use copyright to control access to and use of the law.

---

[1] *Amici* do not opine as to the merits of ASTM's trademark claims.

## I.     In a Democracy, the Public Must Have An Unfettered Ability to Read and Speak the Law

Due process begins with full notice of the law. While it is axiomatic that ignorance of the law is no excuse, "[r]udimentary justice requires that those subject to the law must have the means of knowing what it prescribes." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179 (1989). Unfortunately, that can be particularly difficult when it comes to the myriad administrative regulations and codes that govern the built environment and consumer products, especially those incorporated by reference and therefore potentially siloed in multiple locations.[2]

In addition, if the public has a fundamental First Amendment right to "discussion, debate, and the dissemination of information and ideas," *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978), that discussion and debate surely includes the laws that govern us. As the Supreme Court has noted, "'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs' [in order to] ensure that the individual citizen can effectively

---

[2] Ironically, perhaps, that very difficulty helped lead to the process of incorporation by reference. The Federal Register Act (Pub. L. No. 74-220, ch. 417, 49 Stat. 500-503 (July 26, 1935)) was spurred in part by government enforcement of an administrative oil quota rule that, it turned out, did not exist. *Oil Suit Dismissed in Supreme Court*, N.Y. Times, Oct. 2, 1934, at 6; *see also* Erwin N. Griswold, *Governance in Ignorance of the Law: A Plea for Better Publication of Executive Legislation*, 48 Harv. L. Rev. 198 (1934).

participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 604 (1982) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

The ability to discuss and debate the law—which necessarily requires access to its contents—is *especially* crucial when that law is a privately developed code. The public cannot blindly rely on government agencies to ensure that such codes serve the public interest. *See* Jodi L. Short, *The Political Turn in American Administrative Law: Power, Rationality, and Reasons*, 61 Duke L.J. 1811, 1821 (2012). Indeed, the Supreme Court has described the National Electrical Code, incorporated into law in many jurisdictions, as a potential restraint of trade "imposed by persons unaccountable to the public and without official authority, many of whom have personal financial interests in restraining competition." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502 (1988).

As Professor Nina Mendelsohn notes:

> Regulatory standards . . . are among the longest-lasting, highest-impact exercises of power by government. They cover virtually every area of governmental power, apply to entire classes of entities and individuals, and have prospective, legally binding effect until the government takes further action to repeal them. . . . Accountability is thus critical to deterring agency violations of law and arbitrariness, to safeguarding against "capture" or the undue influence of any particular subgroup, to inhibiting reliance on inadequate or biased information, and to addressing a range of other governance problems.

Nina A. Mendelson, *Private Control Over Access to Public Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 772 (2014).

In addition to accountability, amicus briefs filed with the D.C. Circuit in *ASTM v. Public.Resource.Org* amply illustrate the practical value of full access to the law, including incorporated standards. Journalists explained that they frequently provide news coverage related to these standards, and access is essential to informing their work, and in turn to educating the public. Amicus Br. of Rptrs. Comm. for Freedom of the Press et al. at 8–10, *ASTM v. Public.Resource.Org*, 82 F.4th 1262 (2023) (No. 22-7063).[3] Union members explained that unfettered access to mandatory standards helps them advocate and negotiate for safe working conditions. Amicus Br. of Am. Fed'n of State, Cnty. & Mun. Emps. at 5–8, *ASTM*, 82 F.4th 1262.[4] Library associations explained that full access to legal information helps them fulfill their missions, noting in particular the increasing number of pro se litigants among their patrons. Amicus Br. of Library Futures Inst. et al. at 3–4, *ASTM*, 82 F.4th 1262.[5] And the NAACP explained that unfettered access to and

---

[3]     Available     at     https://www.eff.org/document/amicus-brief-reporters-committee-freedom-press-et-al-0

[4]     Available     at     https://www.eff.org/document/amicus-brief-american-federation-state-county-municipal-employees.

[5]  Available  at  https://www.eff.org/document/amicus-brief-library-futures-everylibrary-institute-authors-alliance-public-knowledge.

use of such standards helps citizens assert their legal rights and advocate for legal

reforms. Amicus Br. of NAACP at 16–25, *ASTM*, 82 F.4th 1262.[6]

## II.   Copyright Claims in Standards Incorporated by Reference Into Law Are Categorically Unenforceable

Copyright is nothing if not the exclusive right to restrict access to, and use

of, protected works. Accordingly, recognizing such a right in law would create an

untenable conflict between the Copyright Act and the Bill of Rights. As the First

Circuit has observed.:

> [I]t is hard to see how the public's essential due process right of free access to the law (including a necessary right freely to copy and circulate all or part of a given law for various purposes), can be reconciled with the exclusivity afforded a private copyright holder.…

*Building Officials & Code Administration v. Code Technology, Inc* 628 F.2d 730,

736 (1st Cir. 1980).

Courts have taken a variety of approaches to resolving that conflict, all of

which logically apply to standards incorporated by reference into law.

### A.   The Government Edicts Doctrine Forbids Copyright Restriction on Law

In 2020, the Supreme Court held that annotations to Georgia's official

statutory code, as government edicts, were free from copyright. *Georgia v.

Public.Resource.Org*, 590 U.S. 255 (2020).  The Court explained that officials who

---

[6] Available at https://www.eff.org/document/amicus-brief-naacp.

"speak with the force of law" cannot claim copyright in the works they create in the course of their official duties. *Id.* at 259.

This holding reflected an unbroken line of case law dating to the Court's first copyright decision: *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834). In that case, one of the Court's official reporters claimed copyright in his annotated collection of the Court's opinions. The Court declared it was "unanimously of opinion, that no reporter has or can have any copyright in the written opinions delivered by this Court." *Wheaton,* 33 U.S. (8 Pet.) at 668. That conclusion "apparently seemed too obvious to adorn with further explanation." *Georgia*, 590 U.S. at 264.

Fifty years later, in *Banks v. Manchester*, 128 U.S. 244 (1888), the Court rejected a similar copyright claim by a court reporter of the Ohio Supreme Court. "The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute." *Id.* at 253; s*ee also Howell v. Miller*, 91 F. 129, 137 (6th Cir. 1898) ("[A]ny person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book . . . .").

**B.     The Government Edicts Doctrine Encompasses Laws Incorporated by Reference**

The central thread in all of these cases, from *Wheaton* to *Georgia*, is the basic principle that in a nation governed by the rule of law, "no one can own" it because "'all should have free access' to its contents." *Georgia*, 590 U.S. at 265 (quoting *Nash v. Lathrop*, 142 Mass. 29, 35 (Mass. 1886)).

The fact that some laws are incorporated by reference does not change the analysis. The words of our statutes and regulations are frequently composed by private parties: constituents, lobbyists, industry associations, law professors, other state and foreign officials, uniform law commissions, and groups like the American Legislative Exchange Council. *See* Victoria F. Nourse & Jane S. Schachter, *The Politics of Legislative Drafting: A Congressional Case Study,* 77 N.Y.U. L. Rev. 575, 583 (2002); K. Kindy, *In Trump era, lobbyists boldly take credit for writing a bill to protect their industry*, Washington Post (July 31, 2017).[7]

When a legislature or a regulator adopts these words in its official capacity, however, those works become government edicts. If courts allowed private parties to claim copyright in those edicts, "there would be 'no outer limit on claims of copyright prerogatives by nongovernmental persons who contribute to writing "the

---

[7]   Available   at   https://www.washingtonpost.com/powerpost/in-trump-era-lobbyists-boldly-take-credit-for-writing-a-bill-to-protect-their-industry/2017/07/31/eb299a7c-5c34-11e7-9fc6-c7ef4bc58d13_story.html.

law",' such as lobbyists or law professors.…An individual who drafted a statute or amendment later adopted by Congress could claim copyright in the text." Amicus Br. of United States at 15, *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, 539 U.S. 969 (2003) (No. 02-355) (*en banc*)).[8]

The Fifth Circuit has twice addressed an issue virtually identical to that presented here. In *Veeck*, a private citizen posted online model building codes that two Texas towns had adopted by reference. *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791 (5th Cir. 2002). The organization that developed the codes sued for copyright infringement. Sitting *en banc*, the Fifth Circuit rejected the claim, using language that presaged the Supreme Court's construction of authorship in *Georgia*:

> The very process of lawmaking demands and incorporates contributions by "the people," in an infinite variety of individual and organizational capacities. Even when a governmental body consciously decides to enact proposed model building codes, it does so based on various legislative considerations, the sum of which produce its version of "the law." In performing their function, the lawmakers represent the public will, and the public are the final "authors" of the law.

*Id.* at 799.

The court revisited the issue two decades later, in *Canadian Standards Association v. PS Knight Co., Ltd.*, -- F.4th -- , 2024 WL 3418717 (5th Cir. July

---

[8] Available at https://www.justice.gov/sites/default/files/osg/briefs/2002/01/01/2002-0355.pet.ami.inv.pdf.

16, 2024). The plaintiff in that case also developed model codes, some of which were incorporated by reference into Canadian law. Defendants published copies of those incorporated codes. Applying Canadian law to the question of copyrightability, the court agreed that model building codes may be copyrightable in Canada. Applying U.S. law to the question of infringement, however, the court held that once those codes were incorporated into law, they were no longer protected under the Copyright Act. Because defendants published only model codes that had become law, their use was not infringing. *Id.* at 4–6 (citing *Veeck*, 293 F.3d at 800).

### C.   The Plain Text of the Copyright Act and the Merger Doctrine Also Exclude Standards Incorporated into Law.

Courts have also looked to the idea/expression dichotomy, which the Supreme Court instructs is one of copyright's necessary "built-in First Amendment accommodations." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). Copyright does not apply to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. §102(b).

Law, including components incorporated by reference, falls easily within this category. It is a "*system* of rules that regulate the conduct of a community and is often enforced by a controlling authority through penalties." *See* "Law," Legal Info. Inst., Cornell L. Sch., https://www.law.cornell.edu/wex/law; *see generally*

11

L. Ray Patterson & Craig Joyce, *Monopolizing the Law: The Scope of Copyright Protection for Law Reports and Statutory Compilations*, 36 UCLA L. Rev. 719, 777 (1989).

And to the extent that standards contain creative expression, incorporation into law causes those expressive elements to merge with the "idea" of the law as enacted, because there is then only one way to express the rule that binds people in a jurisdiction. *Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988) ("When there is essentially only one way to express an idea, the idea and its expression are inseparable and copyright is no bar to copying that expression.").

When a person seeks to read, share, and fully engage with the law, they must use the actual text of the law—there is no equivalent or alternative. *Computer Associates Int'l v. Altai, Inc.*, 982 F.2d 693, 708 (2d. Cir. 1992) ("[W]hen specific instructions, even though previously copyrighted, are the only and essential means of accomplishing a given task, their later use by another will not amount to infringement."). In *International Code Council, Inc. v. Upcodes,* for example, the court found that "copying a model code that has been adopted in full would be protected by merger if done for the purpose of expressing the identically-worded law." 2020 WL 2750636, 21 (S.D.N.Y May 27, 2020).

As Plaintiff notes, circuits vary as to whether merger is determined at the time of infringement or creation. Pl.'s Rev'd Mem. of Law at 23–25. But that distinction is irrelevant where, as here, there is a legally significant intervening event: adoption of the text at issue as law by a government authority. That adoption, not the subsequent challenged use of the text, creates merger.

Better guidance may be found in *Kern River Gas Transmission Co. v. Coastal Corp*., where the plaintiff took a United States Geographical Survey topographical map and marked it to indicate where it proposed to locate a pipeline. 899 F.2d 1458 (5th Cir. 1990). The Federal Energy Regulatory Commission approved the route. The defendant then copied the marked map to prepare a competing bid. Responding the plaintiff's subsequent copyright infringement claim, the Fifth Circuit Court of Appeals concluded that "the idea of the location of the pipeline and its expression embodied in [the map] are inseparable and not subject to protection." *Id.* at 1463–64. "To extend protection to the lines would be to grant Kern River a monopoly of the idea for locating a proposed pipeline in the chosen corridor, a foreclosure of competition that Congress could not have intended to sanction through copyright law." *Id.*

ASTM's reliance on the district court's first summary judgment decision in *ASTM v. Public.Resource.Org* is misplaced. Pl.'s Rev'd Mem. of Law at 23. That ruling was vacated on appeal, *ASTM v. Public.Resource.Org*, 896 F.3d 437, 458

(D.C. Cir. 2018), and while the court of appeals did not expressly address merger, choosing instead to focus on fair use, it "put[] a heavy thumb on the scale in favor of an unrestrained ability to say what the law is." *Id.* at 459 (Katsas, J., concurring).

### D. The Public Needs Equal Access to All Standards Necessary to Comprehend Legal Obligations

The fact that the standards at issue in this case were not themselves directly incorporated into law does not change the analysis. They are included in UpCodes' database—and make up part of the law—because they are essential components of the standards that *are* so incorporated and therefore necessary to understand those standards. As such, they are equivalent to statutory definitions that give meaning to the statute as a whole. Restrictions on their access and use result in an incomplete, economy-class version of the law; only citizens who can afford it will be able to obtain first-class comprehension of their legal duties and rights. *See Georgia*, 590 U.S. at 275.

## III. Publication of Incorporated Standards Serves the Public Interest and the Purposes of Copyright

While *Amici* urge the Court to recognize that the standards at issue here, as laws, are ineligible for copyright protection, courts have also looked to copyright's other built-in First Amendment accommodation, fair use, to resolve the potential conflict between the Copyright Act and the Bill of Rights. *See* Defs.' Rev'd PI

Opp. at 20–21 (collecting cases); *see also ASTM v. Public.Resource.Org.*, 82 F.4th 1262, 1265 (D.C. Cir. 2023). In conducting its fair use analysis, the Court must also keep in mind that the factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

In the context of the fourth fair use factor in particular, that exploration requires balancing market effect, if any, against "the public benefits the copying will likely produce." *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 35 (2021). As the D.C. Circuit explained in *ASTM*, "even if [defendant's] postings were likely to lower demand for the plaintiffs' standards, we would also have to consider the substantial public benefits of free and easy access to the law." 82 F. 4th at 1271.

The Court should do so here. As set forth above, *supra* Section I, journalists, civil rights organizations, librarians, unions, and others all require unfettered access to standards incorporated by reference to do their jobs and fulfill their missions.

Courts need that access as well—and they have not always had it. As recently as 2017, for example, the Indiana Supreme Court was unable to obtain a safety code that lay at the heart of a dispute before it because of publisher-imposed limitations on access to the code. *Bellwether Props., LLC, v. Duke Energy Indiana, Inc.,* 87 N.E.3d 462, 467–69 (Ind. 2017). The court ultimately found a copy of the

standard that had been posted on the Internet Archive by Public.Resource.Org, and issued an opinion that highlighted the problem of public access to the law caused by restrictions on material incorporated by reference. *See id.* at 467–69.

A similar dilemma arose in a dispute that turned on application of the 1987 edition of a standard that had been incorporated into the Rhode Island Building Code. *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, F.3d 312, 316 (1st Cir. 2004). The complaining party asked the trial court to take judicial notice of the state building code. The court required the complaining party to introduce the standard into evidence, but counsel were unable to locate the correct edition of the standard (they could only find the 2000 edition). *Id*. at 317. The trial court could not find it either. *Id*. at 321. The court granted judgment as a matter of law against the complaining party for failure to prove the content of the relevant regulation. *Id*. at 318. The First Circuit affirmed, ruling the district court was not obliged to take judicial notice of a regulation it could not review. *Id.* at 321.

These situations are an inevitable result of permitting copyright restriction on the law. Copyright in law also allow the purported rightsholder to abuse its power to charge inflated prices and/or impose restrictions on its access and use. For example, to gain access to incorporated standards through ASTM's online "reading rooms," a user must create an account, providing their full name and email address, and agree that to allow their data to be used for marketing purposes.

16

*See Reading Room*, ASTM Int'l, https://www.astm.org/products-services/reading-room.html (clicking "Open Reading Room" prompts user to create an account); *Privacy Policy*, ASTM Int'l, https://www.astm.org/privacy-policy (providing that ASTM may use collected personal data for marketing purposes). After creating an account, the user cannot enter the reading room until they agree to ASTM's terms of use—which, among other things, require the user's consent to personal jurisdiction in Pennsylvania for any related disputes and forbid *any* copying of the incorporated standards without ASTM's express permission, without exceptions for fair use or otherwise. True to those restrictions, the functionality of the reading rooms is limited, with no options to copy and paste, print, or annotate key text for personal use.

Moreover, copyright "should not grant anyone more economic power than is necessary to achieve the incentive to create." *Google*, 593 U.S. at 21. Accordingly, courts applying the fourth fair use factor must focus on market effects that would "frustrate the purposes of copyright by materially impairing [rightsholders'] incentive to publish the work." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1276 (11th Cir. 2014).

Here, "it is difficult to imagine an area of creative endeavor in which the copyright incentive is needed less." *Veeck*, 293 F.3d at 806. ASTM benefits when its standards become law; adoption allows them, for example, to market

17

compliance-focused training materials. *See Environmental Training*, ASTM Int'l, http://environment.qa-training.astm.org/#/. ASTM and the volunteers who draft standards also presumably believe their standards are an important contribution to public safety. ASTM claims to promote product quality, health and safety, and other public interests. Compl. ¶ 26. The volunteers who actually develop the standards presumably have those same motives and may also be motivated by concern for their own business interests, professional interest in garnering recognition or experience, or their role as government officials.

Given these incentives, the public policy favoring unrestricted access to the subset of standards incorporated by reference into law—including those incorporated indirectly through other standards—does not conflict with the public policy favoring the private development of technical standards. Everyone has ample motivation to continue that work.

## **<u>CONCLUSION</u>**

For the foregoing reasons, *Amici* urge the Court to deny Plaintiff's Motion for Preliminary Injunction.

Dated: August 2, 2024                    Respectfully submitted,

/s/ *Samuel W. Silver*
Samuel W. Silver (Pa. ID 56596)
Abigail T. Burton (Pa. ID 334450)
WELSH & RECKER, P.C.

306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
ssilver@welshrecker.com
aburton@welshrecker.com

*Attorneys for Amici Curiae*
*Electronic Frontier Foundation,*
*iFixit, Inc. and Public Knowledge*

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel W. Silver, certify that on August 2, 2024, I caused a copy of the foregoing Amicus Brief of Electronic Frontier Foundation, iFixit, Inc., and Public Knowledge to be served via the Court's CM/ECF System upon all counsel of record.

Dated: August 2, 2024                         _/s/ *Samuel W. Silver*_____
                                                                Samuel W. Silver