**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>Defendants. | Civil Action No.: 2:24-cv-01895-AB<br><br>**JURY TRIAL REQUESTED** |

# <u>PLAINTIFF'S OPPOSITION TO MOTION FOR LEAVE TO FILE AMICUS BRIEF</u>

# TABLE OF CONTENTS

**Page**

I. LEGAL STANDARD ........................................................................ 1
II. ARGUMENT ........................................................................ 2
  A. The motion should be denied on procedural grounds. ........................ 2
  B. The motion should be denied under the *Sciotto* factors. ........................ 4
    1. Petitioners do not have a "special interest." ........................ 4
    2. Petitioners' interest is represented competently. ........................ 6
    3. Petitioners' brief is neither timely nor useful ........................ 6
      a. The proposed brief is untimely. ........................ 6
      b. The proposed brief is not useful. ........................ 10
    4. Petitioners are partial to a particular outcome. ........................ 11
    5. *Liberty Resources, Inc. v. Philadelphia Housing Authority* is distinguishable from this case. ........................ 12
  C. Petitioners' Proposed Amicus Brief Misconstrues the Law. ........................ 13
    1. Petitioners' purported First Amendment concerns are misplaced. ........................ 13
    2. Due process is not advanced by UpCodes' infringement. ........................ 15
    3. The merger doctrine does not bar copyright protection. ........................ 15
    4. ASTM's Works are not uncopyrightable systems ........................ 18
    5. The government edicts doctrine does not apply here. ........................ 18
    6. The fourth fair use factor does not favor UpCodes. ........................ 20
III. CONCLUSION ........................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu-Jamal v. Horn*,
No. 99-cv-5089, 2000 WL 1100784 (E.D. Pa. Aug. 7, 2000)....6, 9

*Abu-Jamal v. Price*,
No. 95-618, 1995 WL 72251 (W.D. Pa. Aug. 25, 1995)....1

*Apple Computer, Inc. v. Franklin Computer Corp.*,
714 F.2d 1240 (3d Cir. 1983)....16

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)....14

*ASTM v. Public.Resource.org, Inc.*,
No. 13-cv-1215 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017)....18

*ASTM v. Public.Resource.Org, Inc.*,
82 F.4th 1262 (D.C. Cir. 2023)....9

*Banks v. Manchester*,
128 U.S. 244 (1888)....18

*Bellwether Props., LLC, v. Duke Energy Indiana, Inc.*,
87 N.E.3d 462 (Ind. 2017)....22

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)....9, 20

*Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*,
No. 23-50081, 2024 WL 3738421 (5th Cir. Aug. 9, 2024)....10, 19, 20

*Capitol Recs., LLC v. ReDigi Inc.*,
910 F.3d 649 (2d Cir. 2018)....22

*Council for Endangered Species Act Reliability v. Jackson*,
No. CV-10-8254, 2011 WL 5882192 (D. Ariz. Nov. 23, 2011)....2

*Dobson Mills Apartments, L.P. v. City of Phila.*,
No. 21-cv-273, 2022 WL 558348 (E.D. Pa. Feb. 23, 2022)............................6, 10

*Dwelling Place Network v. Murphy*,
No. 20-6281, 2020 WL 3056305 (D.N.J. June 9, 2020) ..................................4, 6

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)...........................................................................................14

*F.A. Davis Co. v. Wolters Kluwer Health, Inc.*,
413 F. Supp. 2d 507 (E.D. Pa. 2005)...................................................................16

*Georgia v. Public.Resource.Org*,
590 U.S. 255 (2020)..............................................................................10, 18, 19

*Getty Petroleum Mktg., Inc. v. Cap. Terminal Co.*
391 F.3d 312 (1st Cir. 2004)...............................................................................22

*Golan v. Holder*,
565 U.S. 302 (2012)...........................................................................................14

*Google LLC v. Oracle Am., Inc.*,
593 U.S.1 (2021)...........................................................................................18, 20

*Granillo v. FCA US LLC*,
No. 16-153, 2018 WL 4676057 (D.N.J. Sept. 28, 2018).......................................5

*Hachette Book Grp., Inc. v. Internet Archive*,
664 F. Supp. 3d 370 (S.D.N.Y. 2023) ..................................................................21

*Harper & Row Publs., Inc. v. Nation Enters.*,
471 U.S. 539 (1985).......................................................................................14, 22

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*,
322 F.3d 26 (1st Cir. 2003)..................................................................................16

*Kahle v. Gonzales*,
487 F.3d 697 (9th Cir. 2007) ...............................................................................14

*Kern River Gas Transmission Co. v. Coastal Corp.*
899 F.2d 1458 (5th Cir. 1990) ..............................................................................17

*Kitzmiller v. Dover Area School Dist.*,
No. 04-cv-2688, 2005 WL 2736500 (M.D. Pa. Oct. 24, 2005)............................9

*Kregos v. Associated Press*,
937 F.2d 700 (2d Cir. 1991) ........................................................................16

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*,
149 F.R.D. 65 (D.N.J. 1993)....................................................................12, 13

*Liberty Resources, Inc. v. Philadelphia Housing Authority*,
395 F. Supp. 2d 206 (E.D. Pa. 2005)...............................................................12

*Mazer v. Stein*,
347 U.S. 201 (1954).........................................................................................22

*Nat'l Air Traffic Controllers Ass'n, MEBA, AFL-CIO v. Mineta*,
No. 99-cv-1152, 2005 WL 8169395 (N.D. Ohio June 24, 2005).......................11

*Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*,
2:21-cv-05262-SPG-E (C.D. Cal., 2021) ............................................................2

*Northern Securities Co. v. United States*,
191 U.S. 555 (1903)...........................................................................................2

*Oracle Am., Inc. v. Google Inc.*,
750 F.3d 1339 (Fed. Cir. 2014) ..........................................................15, 20, 21

*Palladino v. Corbett*,
No. 13-5641, 2014 WL 830046 (E.D. Pa. Mar. 4, 2014).....................................2

*Panzer v. Verde Energy USA, Inc.*,
No. 19-3598, 2021 WL 2186422 (E.D. Pa. May 27, 2021) ...............................11

*Ryan v. CFTC*,
125 F.3d 1062 (7th Cir. 1997) ..........................................................................11

*S.Y. v. Roman Catholic Diocese of Paterson*,
No. 20-2605, 2021 WL 4473153 (D.N.J. Sept. 30, 2021)....................................1

*Sciotto v. Marple Newtown Sch. Dist.*,
70 F. Supp. 2d 553 (E.D. Pa. 1999).........................................................*passim*

*Silvertop Assocs. v. Kangaroo Mfg.*,
931 F.3d 215 (3d Cir. 2019) ....................18

*Strasser v. Doorley*,
432 F.2d 567 (1st Cir. 1970)....................2

*Tatel v. Mt. Lebanon Sch. Dist.*,
No. 22-837, 2024 WL 980070 (W.D. Pa. Mar. 7, 2024)....................1, 4

*Twentieth Century Music Corp. v. Aiken*,
422 U.S. 151 (1975)....................22

*U.S. v. Alkaabi*,
223 F. Supp. 2d 583 (D.N.J. 2002)....................1

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
293 F.3d 791 (5th Cir. 2002) ....................10, 19, 23

*Warren Pub. Co. v. Spurlock*,
645 F. Supp. 2d 402 (E.D. Pa. 2009)....................9

*Wheaton v. Peters*,
33 U.S. (8 Pet.) 591 (1834)....................18, 19

**Statutes**

17 U.S.C. § 107(4) ....................20, 21

17 U.S.C. § 410(c) ....................18

**Other Authorities**

Amicus Br. of American Medical Association, American Dental Association, and American Hospital Association, *ASTM v. Public.Resource.Org*, Case No. 22-7063, Dkt. 1971074 (D.C. Cir. Oct. 28, 2022) ....................8

Amicus Br. of ANSI and Six Standards Organizations, *ASTM v. Public.Resource.Org*, Case No. 22-7063, Dkt. 1971074 (D.C. Cir. Oct. 28, 2022) ....................7, 8

Amicus Br. of The Copyright Alliance, *ASTM v. Public.Resource.Org*, Case No. 22-7063, Dkt. 1971153 (D.C. Cir. Oct. 28, 2022) ............................7, 8

Fed. R. App. Proc. 29 ........................................................................................1

Fed. R. App. Proc. 31(a)(1) ................................................................................7

5 NIMMER ON COPYRIGHT § 19E.06 (2017) .....................................................14

Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM") respectfully submits this memorandum of law in opposition to Electronic Frontier Foundation ("EFF"), iFixit, Inc., and Public Knowledge's (collectively, "Petitioners") August 2, 2024 Motion for Leave To File Amicus Brief (the "Motion"). Dkt. No. 71.

## I. LEGAL STANDARD

Amicus curiae submissions are not generally accepted at the district court stage. In contrast to Federal Rule of Appellate Procedure 29, neither the Federal Rules of Civil Procedure nor the Local Rules of this Court provide for amicus filings. Courts therefore consider amicus participation in district court litigation "rather more the exception than the rule." *Abu-Jamal v. Price*, No. 95-618, 1995 WL 72251, at *1 (W.D. Pa. Aug. 25, 1995); *see also Tatel v. Mt. Lebanon Sch. Dist.*, No. 22-837, 2024 WL 980070, at *1 (W.D. Pa. Mar. 7, 2024) (noting "participation as amicus at the trial court level is rare"); *S.Y. v. Roman Catholic Diocese of Paterson*, No. 20-2605, 2021 WL 4473153, at *9 n.3 (D.N.J. Sept. 30, 2021) ("Unlike the appellate level, where the filing of amicus briefs has become standard procedure, '[a]t the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level.") (citing *U.S. v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002)).

When determining whether to exercise discretion and take the unusual step of granting leave to file an amicus brief at the trial court level, district courts in the Third Circuit generally apply the four-factor test articulated in *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554-55 (E.D. Pa. 1999). Subject to the discretion of the Court, leave to file an amicus brief may be granted when: (1) petitioners have a "special interest" in the particular case; (2) petitioners' interest is

not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) petitioners are not partial to a particular outcome in the case. *Id.*

Where a party opposes the filing of an amicus brief—as is the case here—the Supreme Court has noted that the exercise of judicial discretion should not feature the same "great liberality" granted when parties jointly consent. *See Northern Securities Co. v. United States*, 191 U.S. 555, 555-56 (1903) (denying leave to file where a party withheld direct consent); *Council for Endangered Species Act Reliability v. Jackson*, No. CV-10-8254, 2011 WL 5882192, at *6 (D. Ariz. Nov. 23, 2011) (declining to consider opposed amicus brief) (citing *Northern Securities*, 191 U.S. at 555). Indeed, courts routinely hold that where "a district court lack[s] joint consent of the parties [it] should go slow in accepting, and even slower in inviting, an amicus brief." *Palladino v. Corbett*, No. 13-5641, 2014 WL 830046, at *7 (E.D. Pa. Mar. 4, 2014) (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

Given the current procedural posture of this case and under the above precedent, Petitioners' Motion should be denied for the reasons herein.

## II. ARGUMENT

### A. The motion should be denied on procedural grounds.

The Discovery and Briefing Schedule in this case does not contemplate or provide for amicus briefing at the preliminary injunction phase. *See* Dkt. 44. No party raised the topic of amicus briefing during scheduling negotiations. UpCodes has been aware of amicus interest in the central issues of this litigation since its outset and had ample opportunity to request that amicus briefing be incorporated into the preliminary injunction schedule yet did not do so. *See, e.g. Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, 2:21-cv-05262-SPG-E (C.D. Cal., 2021) at Dkt. 147

(reflecting UpCodes' stipulation to amicus briefing scheduling in a separate litigation).

Other players relevant to the Motion were likewise aware that amicus briefing should typically be incorporated into the governing case schedule. For example, the Motion references EFF's position as lead counsel to the defendant Public Resource in *ASTM v. Public.Resource.Org*, wherein the parties stipulated to an amicus briefing schedule at the district court level in connection with motions for summary judgment. *See* No. 1:13-cv-01215-TSC (D.D.C.) at Minute Entry 5/17/2019; *see also* Dkt. 71 at 2. UpCodes' lead counsel appeared as Public.Resource.Org's counsel in that matter. Declaration of Jane Wise ("Wise Decl.") ¶ 2, Ex. A (Public.Resource.Org's answer showing Mr. Gratz in the signature block as "Attorneys for Defendant-Counterclaimant Public.Resource.Org, Inc."). As a result, UpCodes' lead counsel also was certainly aware of the briefing schedule and amicus participation in that case.

ASTM has neither consented to Petitioners' proposed brief nor agreed to amicus briefing in general. As discussed *infra* at § II.B.3.a., the surprise filing of this uncontemplated Motion just days before ASTM's deadline to reply to UpCodes' preliminary injunction opposition is highly prejudicial to ASTM. In the past, ASTM (and other standards development organizations or "SDOs") have received broad amicus support in other copyright cases, and the views of such amici are foreclosed here, presenting an unbalanced view to the Court. The Court should deny the Motion on this basis alone. If the Court is inclined to allow amicus to participate at all, it should do so at the summary judgment stage and allow both parties' amici to

participate under circumstances where the Court and the parties have time to review and respond to the amicus briefs.

**B. The motion should be denied under the *Sciotto* factors.**

Even if the Court disregards the procedural impropriety and resulting prejudice of the Motion, Petitioners' Motion also fails on each of the *Sciotto* factors.

1. <u>Petitioners do not have a "special interest."</u>

Petitioners fail to identify *any* personal interest that they themselves hold in this litigation, much less to demonstrate the particularized kind of "special interest" that courts require when ruling upon leave motions to file amicus briefs in district courts. *See Sciotto*, 70 F. Supp. 2d at 555. EFF purports to represent a "community of technology users [that] have a strong interest in a copyright system that promotes the progress of science by balancing copyright incentives with countervailing constitutional interests." Dkt. 71 at 1-3. But it is well-established that an "association with a generalized interest in all cases" related to a general subject matter, such as a balanced copyright system, "is not the kind of special interest that warrants amicus status." *See Sciotto*, 70 F. Supp. 2d at 555.

For example, in *Tatel v. Mt. Lebanon School District*, an LGBTQ advocacy group that identified its interest as protecting transgender students from harassment and implementing LGBTQ-inclusive curricula was held to not have the requisite "special interest" in the litigation's specific claims. *See* 2024 WL 980070, at *1-2 (denying leave motion). The *Tatel* court emphasized that the interests of "mission-driven advocacy group" that "appear to be largely at the policy level and involve nonparties" are not "special." *See id.; see also Dwelling Place Network v. Murphy*, No. 20-6281, 2020 WL 3056305, at *1-2 (D.N.J. June 9, 2020) (denying amicus status where Petitioner identified merely a general interest in "religious freedom and

the separation of religion and government" and had "submitted 21 amicus briefs in similar cases"). Courts frequently deny amicus status on this ground. *E.g.*, *Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *5 (D.N.J. Sept. 28, 2018) (finding no special interest where a consumer group regularly filed similar amicus briefs in cases of similar subject matters, noting that this was "precisely the type of generalized concern that is not, by itself, sufficient to grant amicus status.")

EFF's self-described interest in representing Internet users with a balanced copyright system cannot be characterized as a "special interest." Instead, EFF pursues generalized policy interests on behalf of nonparties.[1] EFF boasts that it "frequently appears as *amicus curiae* in novel copyright cases," Dkt. 71 at 2, further confirming that it has only a "general interest" not the required "special interest." Dkt. 71 at 1-2. The Motion describes the remaining Petitioners, but it does not identify any special interests that they have in this case. *Id.* at 1-3. Indeed, iFixit, Inc. contends that "being able to understand the mandatory standards for the safety of electronic devices is important to repair professionals and enthusiasts worldwide." Dkt. 71-1 ("Pet. Br.") at 1-2. But the Works at issue here are standards in model building codes, *not* electronic device standards. Therefore, Petitioners' Motion should be denied because, to the extent they have identified any interest in this litigation, it is merely of a general nature.

---

[1] Petitioners do not contend that they will be subject to enforcement of any law incorporating by reference ("IBR") one of ASTM's standards or even identified such a law. *See generally* Dkt. 71-1. Nor do Petitioners identify any third parties which they purport to represent to satisfy the third-party standing requirements. Therefore, for the same reasons that UpCodes lacks standing to raise a due process objection, Pl. Reply. Br. at 14 n.6.

2. Petitioners' Interest is Represented Competently.

Courts routinely deny amicus participation when the interests of Petitioners are adequately represented in the case. *See e.g., Abu-Jamal v. Horn*, No. 99-cv-5089, 2000 WL 1100784, at *4-5 (E.D. Pa. Aug. 7, 2000) (denying leave to file amicus where a party has "highly experienced and qualified counsel who have identified the principal legal issues which amici curiae ask to brief… [and] no prejudice… will result from denial of the amici petitions"). Where a proposed amicus makes no allegation that the existing counsel is unable to competently represent the parties, but merely states that its membership is unrepresented in the litigation, that is insufficient to establish that the factor of "competent representation" weighs in favor of granting leave. *See Dobson Mills Apartments, L.P. v. City of Phila.*, No. 21-cv-273, 2022 WL 558348, at *2 (E.D. Pa. Feb. 23, 2022).

Here, Petitioners never claim that UpCodes' counsel is not qualified to represent their asserted interests. Dkt. 71 at 1-3. Doing so would be quite unusual as UpCodes' lead counsel, Mr. Gratz, sits on Petitioner EFF's Advisory Board.[2] Moreover, UpCodes has litigated multiple standards cases and can be assumed "entirely capable of providing relevant legal arguments and a similar overview of existing case law." *Dwelling Place*, 2020 WL 3056305, at *2.

3. Petitioners' brief is neither timely nor useful.

*a. The Proposed Brief is Untimely.*

As discussed *supra* at Section II.A, Petitioners filed this Motion just 10 days before ASTM's deadline to reply to UpCodes' Opposition to ASTM's Revised Motion for a Preliminary Injunction. *See* Dkt. 44 at 2. The expedited preliminary

[2] *See* EFF, https://www.eff.org/about/advisoryboard (Accessed Aug. 10, 2024).

injunction schedule negotiated by the parties and entered by the Court does not provide for amicus briefing. Dkt. 44.[3]

If Petitioner's surprise motion is granted, it will deprive ASTM of a reasonable opportunity to address in papers any arguments that Petitioners offer against the injunctive relief ASTM seeks. As discussed, *supra* § II.A., this will provide an unbalanced and prejudicial representation of parties interested in this case. Separately, ASTM was also forced to divert resources from its reply to UpCodes' opposition to oppose this Motion, and ultimately filed its reply on August 12 without knowing if Petitioners will be granted leave to file their surprise amicus brief. Dkt. 73 ("Pl. Reply Br.").

Although Petitioners discuss at length the amicus briefs filed in the D.C. Circuit in *ASTM v. Public.Resource.Org*, they omit any reference to the numerous amicus briefs that were filed in that case explaining the importance of copyright protection to the vital SDO ecosystem and the potential negative public consequences of a ruling otherwise, including by:

- The Copyright Alliance, *ASTM v. Public.Resource.Org*, Case No. 22-7063, Dkt. 1971153 (D.C. Cir. Oct. 28, 2022);
- ULSE Incorporated, North American Energy Standards Board, National Electrical Manufacturers Association, Institute of Electrical and Electronics Engineers, Inc., International Code Council, American

[3] Under the Federal Rules of Appellate Procedure, a party ordinarily has either 23 or 14 days to respond to amicus briefs, depending on whether it is the appellant or appellee. *See* Fed. R. App. Proc. 31(a)(1) (providing 30 days for appellee to respond to the appellant's brief and 21 days for appellant to file its reply brief); 29(a) (6) (requiring amicus curiae to file its brief 7 days after the principal brief of the party being supported).

Society of Civil Engineers American National Standards Institute, Inc., *Id.* at Dkt. 1971039; and

- American Medical Association, American Dental Association, and American Hospital Association. *Id.* at Dkt. 1971074.

The Amicus Brief on Behalf of American National Standards Institute and Six Standards Organizations explained the necessity of copyright protection to the livelihood of SDOs and, by extension, the ability of governments to utilize or cite to these standards and the public harm should copyrights expire. Amicus Br. of ANSI and Six Standards Organizations (Dkt. 1971039) at 7-17. The Copyright Alliance explained the dire consequences for creators and copyright owners finding the unauthorized reproduction of the copyrighted standards at issue there "would open the door for commercial actors to exploit others' hard work and financial investments, without seeking permission or contributing to the creative effort, simply by fabricating exceptions to the law that do not exist under the proper and rightful authority of Congress." Amicus Br. of The Copyright Alliance (Dkt. 1971153) at 4-5. The American Medical Association, American Dental Association, and American Hospital Association explained how a holding unauthorized publication of private standards incorporated into law would impact the ability of their organizations "to devote resources necessary to maintain and improve the usefulness of their Works (as medicine, dentistry, and hospital services constantly evolve), and to safeguard the uniformity of those Works in the interests of efficient coding of services and promoting interoperability of medical and dental records systems." Amicus Br. American Medical Association, et al. (Dkt. 1971074) at 5-8.

Moreover, Petitioners' proposed amicus brief incorporates by reference facts from unrelated amicus briefs filed with the D.C. Circuit in *ASTM v. Public.Resource.Org*. Dkt. Pet. Br. at 11-12.[4] Expedited discovery in *this* litigation closed on June 28, 2024. Yet Petitioners now attempt to inject the purported factual representations made on behalf of journalists, civil rights organizations, librarians, and unions regarding *Public.Resource.Org* into *this* litigation. ASTM has not had any opportunity to take discovery regarding these individuals and their assertions, to test the credibility of these representations, or, critically, to challenge Petitioners' dubious argument that representations made in reference to Public.Resource.Org would necessarily be equally applicable to UpCodes. *See Kitzmiller v. Dover Area School Dist.*, No. 04-cv-2688, 2005 WL 2736500, at *1-2 (M.D. Pa. Oct. 24, 2005) (striking amicus brief that did not afford plaintiff the opportunity to challenge assertions within the brief).

In sum, Petitioners' surprise filing of the instant Motion after the close of expedited discovery is improper and prejudicial. Indeed, courts have found that the filing of a partisan amicus brief is fair "only if the other party was afforded an opportunity to respond." *Abu-Jamal*, 2000 WL 1100784, at *4 n.8. On these bases, the Court should deny Petitioners' prejudicial Motion. *Id.* To the extent the Court

[4] *ASTM v. Public.Resource.Org.* concerned copyright fair use in the context of "non-commercial dissemination" of standards IBR'd into federal regulations. *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1265 (D.C. Cir. 2023). Copyright fair use is a notoriously fact-specific analysis that must be done on a case-by-case basis. *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 415 (E.D. Pa. 2009) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)). This case involves commercial copying of works that have never been IBR'd, facts that are critical to the appropriate analysis in this case. Pl. Reply Br. at 1-2, 7-13. Therefore, Petitioners' reliance on the opinions of amici regarding the non-commercial dissemination of IBR'd works is unhelpful.

believes amicus briefing to be helpful, ASTM is amenable to negotiating amicus scheduling with respect to the summary judgment stage of litigation.

*b. The Proposed Brief is Not Useful.*

Courts in this district routinely deny amicus participation as unnecessary where there is limited utility of the additional filings. *E.g., Dobson*, 2022 WL 558348, at *1-2 (denying leave to file amicus where *inter alia* "[a]s to usefulness, the briefs already filed have extensively summarized the relevant issues.").

In their proposed amicus brief, Petitioners regurgitate many of the arguments that UpCodes advances in its Opposition. The proposed brief argues the value of "free access" to the law in light of "due process" concerns. *See* Dkt. Pet. Br. at § I. UpCodes argues the exact same. Dkt. 66 ("Opp.") at § III.A.1.a.vii. The proposed brief argues that standards incorporated by reference are unenforceable under the government edicts doctrine under *Georgia v. Public.Resource.Org*, 590 U.S. 255 (2020), *Veeck*, and *CSA*. *See* Pet. Br. at § II.A-B. UpCodes too relies on *Georgia v. Public.Resource.Org* to similarly argue that a "jurisdiction is the 'author' of the law it adopts, even if a private entity was involved" relying on those same cases. Opp. at §§ III.A.1.a.i-ii. Both the Opposition and the proposed amicus brief posit that merger protects UpCodes because there is only one way to express the law. Opp. at § III.A.1.a.vi.; Pet. Br. at § II.C. And both argue that the public is served by the publication of incorporated standards. Opp. at §§ III.A.1.b, III.A.; Pet. Br. at §§ II.D-III. To the extent Petitioners add anything new, it is limited unhelpful policy arguments at this stage in the proceedings. *See Sciotto*, 70 F. Supp. 2d at 556 ("While policy arguments are certainly interesting and perhaps helpful at the appellate level, they are not the currency of a trial court. If policy arguments are to be the Trust's

only contribution to this case, then the judicial process is better served if the Trust did not contribute at the district court level.")

Where, as is here, a proposed *amicus* brief does not offer an argument not already made by a party, motion for leave should be denied. *See e.g., Panzer v. Verde Energy USA, Inc.*, No. 19-3598, 2021 WL 2186422, at *2 (E.D. Pa. May 27, 2021) (denying leave as *amicus* "does not offer any arguments [party]'s attorneys have not already made.").

4. Petitioners are partial to a particular outcome.

Finally, it is clear that Petitioners are not impartial "friends of the court," but outside parties attempting to bolster one side of the litigation. Indeed, the Petitioners' proffered Motion makes very clear that Petitioners intend to "urge the Court to deny Plaintiff's Motion for Preliminary Injunction." Dkt. 71 at 23. Courts have acknowledged that partiality of amicus petitioners is not dispositive, but have denied leave motions where "[i]t is apparent … that the petitioner is better characterized as 'amicus reus,' or friend of the defendant, than amicus curiae." *See Sciotto*, 70 F. Supp. 2d at 556; *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("The vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such *amicus* briefs should not be allowed. They are an abuse. The term "*amicus curiae*" means friend of the court, not friend of a party."); *Nat'l Air Traffic Controllers Ass'n, MEBA, AFL-CIO v. Mineta*, No. 99-cv-1152, 2005 WL 8169395, at *1 (N.D. Ohio June 24, 2005) (same).

Further evidencing the impartiality of Petitioners is the relationship between EFF and UpCodes' lead counsel: Mr. Gratz is a member of EFF's advisory board.[5] Courts routinely hold that "[w]here a petitioner's attitude toward a litigation is patently partisan, he should not be allowed to appear as amicus curiae." *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993). Thus, Petitioners' Motion should be denied due to their clear impartiality and the combined weight of all *Sciotto* factors, which favor ASTM.

5. *Liberty Resources, Inc. v. Philadelphia Housing Authority* is distinguishable from this case.

In light of the preceding application of the *Sciotto* factors to the instant facts, Petitioners' reliance on *Liberty Resources, Inc. v. Philadelphia Housing Authority*, 395 F. Supp. 2d 206 (E.D. Pa. 2005) (Brody, J.) is sorely misplaced. Dkt. 71 at 4. In *Liberty*, a public housing advocacy group called the Resident Advisory Board ("RAB") petitioned to intervene in a suit brought by a disability rights advocacy group against a public housing authority. *See generally id.* RAB was concerned that discovery sought by the disability advocacy group would reveal confidential information about public housing residents who were not parties to the action. *See generally id.* The *Liberty* court found that RAB did not meet the standard to intervene, but it allowed RAB to participate as amicus on this periphery discovery issue because "although short of a right to intervene, the amicus has a special interest that justifies [its] having a say." *Id.* at 209.

The *Liberty* ruling applied the *Sciotto* factors to RAB. It found that RAB had a special interest in representing the rights of specifically nonparty, non-disabled public housing tenants. *Id.* These specific tenants were not otherwise adequately

[5] *See* EFF, https://www.eff.org/about/advisoryboard (Accessed Aug. 10, 2024).

represented in the litigation because the *Liberty* plaintiff was exclusively obligated to represent disabled tenants, and the defendant housing authority was obligated to participate in discovery and possibly reveal confidential information. *Id.*

Here, Petitioners do not even identify a purported special interest, much less one that UpCodes is not capable of adequately representing. The *Liberty* ruling found RAB's information to be timely and useful, in contrast to Petitioners' brief that regurgitates information already presented to the Court by UpCodes and offers no relevant facts specific to this case. *Id.* Finally, the *Liberty* ruling found "no indication that RAB favors any particular outcome of the case, so long as the rights of non-disabled Section 8 residents are taken into account." *Id.* The same is not true here, where Petitioners specifically advocate that the injunctive relief sought by ASTM be denied.

Thus, although the *Liberty* court found that all the *Sciotto* factors weighed in favor of RAB and justified granting amicus status, the opposite is true here, where Petitioners fail to satisfy a single *Sciotto* factor. *Liberty* instructs that a general public concern is not itself sufficient to justify amicus status; rather, the other *Sciotto* factors must also be met. *Id.* The *Liberty* decision simply does not support the notion that any amicus may participate on a matter of public interest even when they lack a specific interest in the case.

### C. Petitioners' Proposed Amicus Brief Misconstrues the Law.

#### 1. Petitioners' Purported First Amendment Concerns are Misplaced.

Petitioners' purported concern about the First Amendment right to discussion and debate, Pet. Br. at 4, is a complete non sequitur. ASTM's motion for a preliminary injunction does not seek to preclude UpCodes or any other party from

discussing or debating the standards at issue. ASTM simply seeks to prevent a for-profit entity from directly competing with ASTM by copying the entirety of ASTM works for a commercial purpose rather than to comment on or criticize the Works.

Moreover, while Petitioners warn about "an untenable conflict between the Copyright Act" and the First Amendment, Pet. Br. at 7, the Supreme Court has consistently rejected "heightened judicial review" of copyright law under the First Amendment because the Copyright Act "contains built-in First Amendment accommodations." *Eldred v. Ashcroft*, 537 U.S. 186, 218-19 (2003); *Golan v. Holder*, 565 U.S. 302, 327-28 (2012); *Harper & Row Publs., Inc. v. Nation Enters.*, 471 U.S. 539, 559 (1985) ("It is fundamentally at odds with the scheme of copyright to accord lesser rights in those works that are of greatest importance to the public."). Copyright law accommodates First Amendment interests in two ways: the "distinction between copyrightable expression and uncopyrightable facts and ideas, and the latitude for scholarship and comment traditionally afforded by fair use." *Harper & Row*, 471 U.S. at 560; 5 NIMMER ON COPYRIGHT § 19E.06 (2017). If copyright protection is consistent with "those two doctrines," it is "immune from First Amendment scrutiny." 5 NIMMER ON COPYRIGHT § 19E.06; *see Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007) (rejecting argument that change from an "opt-in" to an "opt-out" copyright system required First Amendment review); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (First Amendment right to anonymity "does not ... provide a license for copyright infringement").

As a result, Petitioners and the individuals they purport to represent will always be able to engage in discussion and debate regarding ASTM's standards

consistent with the Copyright Act's idea/expression dichotomy and fair use protections, and this case only involves the commercial exploitation of the entirety of ASTM's standards in direction competition with ASTM.

2. <u>Due process is not advanced by UpCodes' infringement.</u>

As ASTM explained in detail in its Reply Brief, any purported due process concerns also are misplaced. Pl. Reply Br. at 14-15. Petitioners fail to identify any evidence that any person was ever denied reasonable access to the Works. Petitioners' citations to numerous amicus briefs filed in the *ASTM v. Public.Resource.Org* case, Pet. Br. at 6-7, certainly does not evidence any access problem. In fact, all of those amici seemed to have no trouble accessing the standards at issue in that case.

In the present case, the evidence shows that ASTM makes its standards available for free to those who cannot afford them, Dkt. 60-2 at ¶ 14, and neither UpCodes nor Petitioners identify any evidence suggesting that the public will be unable to obtain reasonable access to the Works even if ASTM's motion for a preliminary injunction is granted.[6]

3. <u>The merger doctrine does not bar copyright protection.</u>

Like UpCodes, Petitioners focus on IBR and argue merger should be assessed at the time of adoption by government authorities. Pet. Br. at 13. They are wrong. The merger doctrine is assessed at the time the work is created. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) ("It is well-established that

[6] Petitioners appear to misunderstand the type of access to the Works that UpCodes provides. It does not provide "unfettered" access to the Works. UpCodes places the Works behind a password-protected portion of its website, where only registered users can access the information. Doing so requires UpCodes' users to accept its terms of service. Dkt. 64 at ¶ 50. Although ASTM addresses this in its Complaint, Dkt. 1, Petitioners ignore the fact entirely.

copyrightability and the scope of protectable activity are to be evaluated at the time of creation, not at the time of infringement."); *Kregos v. Associated Press*, 937 F.2d 700, 705-07 (2d Cir. 1991) (analyzing the expressive options available to the creator of a baseball form at the time the form was fixed in a tangible medium); *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 511 (E.D. Pa. 2005) (analyzing merger by considering the options available to the author at the time of creation).

Petitioners claim that that adoption of a text by a government authority is an "intervening event" that terminates copyright protection, but this is simply another way to argue that facts that post-date the creation of the work can be considered in the merger analysis, a notion the Third Circuit has rejected. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983) ("This claim [that computer programs can be rewritten] has no pertinence to either the idea/expression dichotomy or merger. The idea which may merge with the expression, thus making the copyright unavailable, is the *idea which is the subject of the expression*."); *accord* U.S. Br. at 12 in *Google, Inc. v. Oracle Am., Inc.*, No. 18-956 (Feb. 19, 2020) ("Petitioner thus asks the Court to perform its merger analysis based on the circumstances that existed when petitioner's copying occurred. But copyrightability is determined as of the time when a work is created."); U.S. Br. at 18 n.2 in *Google, Inc. v. Oracle Am., Inc.*, No. 14-410 (May 26, 2015) (rejecting argument that "the copyrightability of a particular work [c]ould turn on events that substantially postdated the work's creation. That result is at odds with the Copyright Act's basic design, under which copyright protection subsists from the creation of a work through the prescribed statutory term."); *John G. Danielson, Inc. v. Winchester-*

*Conant Props., Inc.*, 322 F.3d 26, 42-43 (1st Cir. 2003) (rejecting post-creation facts to support merger).

Petitioners rely entirely on the Fifth Circuit's decision in *Kern River Gas Transmission Co. v. Coastal Corp.* to support their merger argument. Pet. Br. at 13. That case involved copying of the plaintiff's topographical maps depicting a proposed route for a natural gas pipeline. 899 F.2d 1458 (5th Cir. 1990). As Petitioners acknowledge, the Fifth Circuit held that, at the time plaintiff created its maps, there was only one effective way to convey the idea of the proposed location of a pipeline across miles of terrain and to extend copyright protection to the lines would be to grant the plaintiff a monopoly for locating a proposed pipeline in the chosen corridor. *Id.* at 1463-64. As such, there was little dispute in that case that there was only one way of expressing the pipeline's location *at the time of creation*. In fact, "Kern River's principal planning engineer testified that he could think of no other way to portray the idea of the pipeline's proposed location." *Id.*

That is not the case here. When the Works were created, there were countless ways to express the ideas in them, and maintaining ASTM's copyright protection in those works will not prevent any party from developing competing standards. Unlike in *Kern*, maintaining ASTM's copyright protection will not foreclose competition through copyright law. *See id.* at 1464. In fact, nowhere does amici argue that there were only one or a limited number of ways to express the ideas set forth in the Works. There is nothing that would preclude UpCodes or another standards development organization from writing publications expressing the same ideas set forth in the Works. Opp. at 17, 18 n.5 (UpCodes concedes as much in its opposition brief). Therefore, this is not one of the "rare occurrence[s]" where merger

applies because "'there are no or few other ways of expressing a particular idea.'" *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 222 (3d Cir. 2019).

4. ASTM's Works are Not Uncopyrightable Systems.

Nor are ASTM's standards uncopyrightable systems. ASTM is entitled to a presumption of validity and ownership based on its registered copyrights. 17 U.S.C. § 410(c); Pl. Br. 10-11. "[I]n shorthand form ... unlike patents, which protect novel and useful ideas, copyrights protect 'expression' but not the 'ideas' that lie behind it." *Google LLC v. Oracle Am., Inc.*, 593 U.S.1, 18 (2021). In any case, "simply calling a work a 'procedure' or a 'method' does not revoke its copyright protection under the Copyright Act. This argument misunderstands or ignores the expression/idea dichotomy ... codified in § 102(b)." *ASTM v. Public.Resource.org, Inc.*, No. 13-cv-1215 (TSC), 2017 WL 473822, at *8-9 (D.D.C. Feb. 2, 2017), *rev'd in part, on other grounds*, 896 F.3d 437 (D.C. Cir. 2018) (finding that ASTM standards were not uncopyrightable systems, procedures, or methods stating: "The standards in these cases contain expression that is certainly technical but that still bears markings of creativity.").

5. The government edicts doctrine does not apply here.

Petitioners rely on *Georgia v. Public.Resource.Org* for the proposition that the government edicts doctrine shields UpCodes' from its infringing use of the Works. 590 U.S. at 265. But the Supreme Court in *Georgia* was clear in its holding that the government edicts doctrine "does not apply … to works created by … private parties[] who lack the authority to make or interpret the law," 590 U.S. at 265. Unlike *Wheaton v. Peters,* 33 U.S. (8 Pet.) 591 (1834) and *Banks v. Manchester,* 128 U.S. 244 (1888), the Works here are not the writings of judges in the course of their official duties, but are privately authored standards. Consistent with its holdings in

*Wheaton* and *Peters*, the Supreme Court explained that the government edicts rule as a "straightforward rule based on the identity of the author," and it "applies regardless of whether a given material carries the force of law." *Georgia* , 590 U.S. at 263. Here, the author of the Works, ASTM, does not have "the authority to make or interpret the law" rendering the government edicts doctrine inapplicable. *Id.* at 265

Petitioners argue that the fact that some laws are incorporated by reference (as opposed to written by lawmakers) does not change the government edicts analysis. As an initial matter, this ignores that the Works have not been incorporated by reference in a single jurisdiction nor have Petitioners cited to a single example of such. Even so, Petitioners reliance on *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791 (5th Cir. 2002) and *Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, No. 23-50081, 2024 WL 3738421 (5th Cir. Aug. 9, 2024) ("CSA") is misplaced because the Works at issue here are not "model codes," they are standards.[7] *Veeck* explicitly limited its termination of copyright protection to the circumstances involving "the wholesale adoption of a model code promoted by its author…for use as legislation" and made clear that "references to extrinsic standards" did not terminate copyright protection. *Veeck*, 293 F.3d at 804. Here, not only are the Works at issue standards (and not model codes), but they also were not promoted by ASTM "for use in legislation." *Id.* In this circumstance, *Veeck* acknowledges that maintaining copyright protection is appropriate.

---

[7] Petitioners' argument also fails because, as ASTM previously explained in detail, *Veeck* and its progeny are no longer good law after the Supreme Court's decision in *Georgia*. Pl. Reply Br. 7-15.

*Canadian Standards Association v. P.S. Knight Co.* reinforces *Veeck*'s distinction between "model codes" and standards. *CSA*, 109 F.4th at 336. The court in *CSA* analyzed whether the works at issue were more akin to "model codes" which "serve 'no other purpose than to become law,'" or "extrinsic standards" which may require consultation in process of fulfilling obligations but have non-governmental purposes. *Id.* at 336 (quoting *Veeck* at 804–05). Unlike the codes at issue in *CSA*, the Works at issue are standards and not model codes that were developed for the sole purpose of adoption by law makers. Pl. Reply Br. at 7-15.

6. The fourth fair use factor does not favor UpCodes.

Petitioners argue that the fourth fair use favors UpCodes. That factor is "the effect of [defendants'] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Tellingly, Petitioners do not argue (or provide any evidence indicating) that UpCodes' decision to make the entirety of ASTM's Works available online for free will not adversely impact ASTM's markets for those Works. *See generally* Pet. Br. at 14-18. Nor could they. *See* Pl. Reply Br. at §§ III.C.4-5. The inability to do so is devastating to UpCodes' fair use defense because Supreme Court has made clear that a proponent of fair use will "have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Campbell*, 510 U.S. at 590.

Petitioners argue that the fourth fair use factor nevertheless favors UpCodes because its copying will benefit the public, relying primarily on *Google LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021). Pet. Br. at 15. In *Google*, the Supreme Court did "take into account the public benefits the copying will likely produce," *id.* at 35, but it also made clear that it was not holding that questions related to the public benefits "are always relevant to the application of fair use, not even in the world of

computer programs," *id.* at 36. Equally important, the public benefits that the Court in *Google* took into account were focused on benefits that would unlock "copyright's basic creativity objectives," *id*. at 39, and "the risk of creativity-related harms to the public," *id*. at 40, such as "copyright's concern for the creative production of new expression," *id.* at 35, rather than other types of potential public benefits. In that case, the Supreme Court concluded that that the fourth factor favored fair use because enforcing Oracle's copyright would have limited "the future creativity of new programs," such as the one developed by Google. *Id.* at 39.

*Google* does not suggest the fourth factor weighs in favor of fair use in this case. Even if the Court was inclined to consider the public interest when assessing "the effect of [defendants'] use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), notwithstanding the Supreme Court's recognition that it may not be relevant in many cases, Petitioners failed to identify any relevant public benefits, i.e., benefits that will unlock "copyright's basic creativity objectives," *id.* at 39.

UpCodes' copying did not make any creative contributions to the public. UpCodes merely copies the Works verbatim, and it did not offer any criticism or commentary on the Works. Dkt. 7 at 21-22. Far from advancing the "flow from creative improvements," a party who adds nothing and profits from its theft cannot be said to do so for the public's benefit. *See also Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370, 389 (S.D.N.Y. 2023) (finding no fair use where virtually identical digital copies did not provide criticism, commentary, or

information about the works, but instead usurps the market for the works by providing "bootleg" copies).[8]

In fact, a finding of fair use in this case will hinder future creativity. "When a secondary use competes in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright," which is "to incentivize new creative works by enabling their creators to profit from them." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018). As the Supreme Court has explained, "[t]he economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts.'" *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985) (quoting *Mazer v. Stein*, 347 U.S. 201, 219 (1954)); *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151,

[8] Neither *Bellwether Props., LLC, v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 467-69 (Ind. 2017), nor *Getty Petroleum Mktg., Inc. v. Cap. Terminal Co.* 391 F.3d 312, 318 (1st Cir. 2004), shed any light on the issues in this case. In those two cases, it appears as though individuals may have been unable to access publications, but the unrebutted evidence in this case confirms that the Works are reasonably available (and even available for free in some circumstances), Dkt. 60-2 at ¶ 14. Moreover, although Petitioners claim "[t]hese situations are an inevitable result of permitting copyright restriction," Pet. Br. at 16, they offer no citation to support for this bald assertion. In fact, there is no reason to believe the works in these two cases were unavailable due to copyright protection. It is far more likely they were difficult to find because there were published more than a decade earlier.

To the extent *Bellwether* says anything of relevance, it is the court's recognition of the significant benefits of privately developed standards, including that they "save[] governments from having to hire policy experts to craft these standards. The process of developing these standards is often more streamlined because private actors are not subject to the same regulatory hurdles." *Bellwether Properties, LLC*, 87 N.E.3d at 468.

156 (1975) ("The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate [the creation of useful works] for the general public good.") Those incentives are particularly important to standards development organizations, like ASTM, who "deserve incentives" to perform their public service. *Veeck*, 293 F.3d at 805.[9] Without the ability to recoup its costs through licensing fees, ASTM cannot continue to create its safety standards that *do* contribute to the public. Dkt. 60-2 at ¶ 54.

In sum, Petitioners provide no valid support for finding that UpCodes' competitive commercial use is fair.

## III. CONCLUSION

For all the foregoing reasons, ASTM respectfully requests that Court deny Petitioners' Motion for leave to file their proposed amicus brief in support of UpCodes' Opposition to ASTM's Revised Motion for a Preliminary Injunction.

[9] Petitioners' reliance on *Veeck* to assert that ASTM's standards are "an area not deserving of copyright incentives," Pet. Br. at 17, mischaracterizes the decision. There, the *Veeck* majority, relying on a treatise that fundamentally misunderstood the standards development process and failed to distinguish between "trade organizations" and most standards development organizations, Pls.' Reply Br. at 32-33, stated that model codes adopted into law were "an area of creative endeavor in which the copyright incentive is needed less." *Veeck*, 293 F.3d at 806, (quoting GOLDSTEIN ON COPYRIGHT § 2.5.2, at 2:51). As a result, the suggestion that model code developers do not deserve copyright incentives is incorrect. In any event, even the *Veeck* court acknowledged that IBR'd standards deserve copyright protection. *Id.* at 805. Moreover, *Veeck* stated that "the result in this case would have been different" if a commercial publisher—like UpCodes, here—had published the model building codes as model codes. *Id.*

Dated: August 13, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*

**DLA PIPER LLP (US)**
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (admitted *pro hac vice*)
Jenna N. Rowan (*pro hac vice* motion forthcoming)
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com
jenna.rowan@us.dlapiper.com

Gabrielle C. Velkes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff*
*American Society for Testing and Materials d/b/a ASTM International*

## CERTIFICATE OF SERVICE

I, J. Kevin Fee, certify that on August 13, 2024, I caused a copy of the foregoing, Plaintiff's Opposition to Motion for Leave to File Amicus Brief, to be served upon all counsel of record via the courts ECF system.

*/s/ J. Kevin Fee*
J. Kevin Fee