DLA PIPER

**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
www.dlapiper.com

Jane W. Wise
jane.wise@us.dlapiper.com
T 202.799.4149
F 202.863.7849

February 9, 2026
*VIA ECF*

The Honorable Anita B. Brody
United States District Court
Eastern District of Pennsylvania
James A. Byrne United States Courthouse
601 Market Street, Room 7613
Philadelphia, PA 19106

**Re: *American Society for Testing and Materials d/b/a ASTM International v. UpCodes, Inc.* et al., Case No. 2:24-cv-01895-AB**

Dear Judge Brody:

UpCodes' January 26, 2026 letter (Dkt. 142, "Mot.") seeks burdensome discovery that bears no relation to the claims or defenses at issue in this case and documents that ASTM has either already produced or agreed to produce. As a result, UpCodes' motion should be denied in its entirety.

## I. Background

In this case, it is undisputed that UpCodes copied virtually all of the 10 ASTM standards at issue in this litigation ("Works in Suit") without ASTM's consent. UpCodes attempts to defend its unauthorized copying by arguing its copying is fair use because (1) the Works in Suit were referenced in the 2018 International Building Code (the "2018 IBC") authored by an independent standards development organization, International Code Council ("ICC"), and (2) several governmental authorities have incorporated portions of the 2018 IBC by reference. Because ICC's reference to the Works in Suit form the basis of UpCodes' fair use defense, ASTM already produced documents and communications related to ICC's references to the Works in Suit.

Rather than limit its discovery requests to the Works in Suit and the SDO that references them, UpCodes demands ASTM search for documents and communications from eight additional SDOs that do not appear to reference the Works in Suit; namely, IAPMO, NFPA, AWS, UL, NRCA, ASME, API, and ACI. Although it is far from obvious in UpCodes' letter, even after almost two years of litigation, UpCodes cannot identify a single code or standard published by any of those eight SDOs that refer to one of the Works in Suit. Because these SDOs do not reference any of the Works in Suit, any communications with these SDOs are irrelevant and UpCodes' attempt to compel ASTM to search for, review, and produce any such communications is disproportionate to the needs of this case.

With respect to UpCodes' request for documents related to non-mandatory portions of the Works in Suit and form agreements related to the development of the Works in Suit, ASTM already either produced any responsive documents or agreed to do so. As a result, UpCodes' motion as to these requests should be denied as moot.

## II. The Requests at Issue

UpCodes requests three categories of documents from ASTM. Dkt. 142 at Ex. D at 6-9, 14-15 & Ex. E at 9.

### A. Category 1: Documents Related to Irrelevant SDOs

> Request No. 3: All documents related to ASTM's collaboration with, sponsorship of, or partnership with any SDO that has ever published a code or standard that adopted, cited, or otherwise referred to any version of any Work in Suit.
>
> Request No. 4: All communications with any SDO that has published a code or standard that referenced, cited, or otherwise referred to any Work in Suit about (1) the Work in Suit or (2) any code or standard published by the SDO that has adopted, cited, or otherwise referred to any version of the Work in Suit.
>
> Request No. 5: All documents and communications related to ASTM's consent for other SDOs to adopt, cite, or otherwise refer to ASTM standards, including without limitation (1) documents and communications regarding whether ASTM's consent is required for any SDO to publish a code or standard that adopts, cites or otherwise

refers to an ASTM standard and (2) documents and communications reflecting ASTM's consent for such reference.

B. Category 2: Documents Related to Non-Mandatory or Supplementary Portions of the Works in Suit

Request No. 11: All documents specifying the purpose, use, or application of ASTM's explanatory notes, supplemental materials, appendices, annexes, or any other portion of the Works in Suit that ASTM alleged a 'expressly non-mandatory or supplementary' (ECF no. 1-7, at ¶ 40).

C. Category 3: Form Agreements Related to the Development of the Works in Suit

Request No. 47: Documents sufficient to show all forms of agreements entered into by non-ASTM persons with ASTM related to their involvement with the development of the Works in Suit.

UpCodes also argues, without basis, that ASTM's production "is likely incomplete," Mot. at 7, and that ASTM failed to conduct a reasonable search for communication with ICC. Nonsense. ASTM conducted a reasonable search for documents and produced non-privileged responsive documents to UpCodes' Requests. That UpCodes wishes there were more communications or documents is of no moment. Nevertheless, counsel for ASTM and UpCodes discussed UpCodes contention that certain emails suggest additional documents exist. UpCodes agreed to provide Bates numbers for those documents, and ASTM agreed that it will review those documents and investigate whether any additional documents exist. Accordingly, ASTM submits that UpCodes' motion is moot as to ICC.

## III. Documents and Communications with SDOs that Do Not Reference Any Work is Suit are Irrelevant.

When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019). "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson*,

414 F. Supp. 3d at 744 (citing *Wright v. City of Philadelphia*, 2017 WL 1541516, at *1 (E.D. Pa. Apr. 28, 2017)).

"'While generally liberal, permissible discovery is not without limitations,' meaning it 'should not serve as a fishing expedition.'" *Coooper v. Universal Stainless & Alloy Prods., Inc.*, 2025 WL 1501883, at *4 (W.D. Pa. May 27, 2025) (quoting *Upshaw v. Janssen Rsch. & Dev., LLC*, 2014 WL 1244047, at *3 (E.D. Pa. Mar. 26, 2014)). Likewise, "discovery requests are not relevant simply because there is a possibility that the information may be relevant to the general subject matter of the action." *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 812 (W.D. Pa. 2016).

A. Documents and Communications with SDOs that Have Nothing to Do with the Works in Suit are Not Relevant.

UpCodes offers two relevance arguments to support its motion to compel: (1) "fair use factor two (the nature of the works in suit)" and (2) "factor four: the effect of UpCodes' use on the potential market for or value of ASTM's standards." Mot. at 5-6. Neither argument has any merit.

1. Fair Use Factor 2 Focuses on the Work Itself, So Communications About the Work are Irrelevant.

The Copyright Act identifies four statutory factors to consider in the context of the fair use analysis. 17 U.S.C. § 107. Factor 2 is "the nature of the copyrighted work." This inquiry asks whether the work has been published and where on the spectrum of creativity of the work falls.[1] *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985).

Here, it is undisputed that all of the Works in Suit were published prior to UpCodes' infringement. Accordingly, the only remaining inquiry is the degree of creativity of the Works in Suit. That analysis focuses on the text of the works themselves. *See Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, No. 1:20-CV-613-SB, 2025 WL 458520, at *9 (D. Del. Feb. 11, 2025) (factor two "focus[es] on the degree of

[1] Even factual works contain original expression "close[ ] to the core of intended copyright protection." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 187 (2d Cir. 2024) (finding factor two supported finding no fair use for non-fiction books).

creativity *inherent* to the work") (emphasis added) (quoting 4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13F.06 (2025)).

UpCodes offers no explanation as to why it needs communications with eight SDOs to conduct the objective inquiry into the degree of creativity of each of the Works in Suit. Assuming arguendo, that ASTM has a communication saying that another SDO could reference one of its standards in the third-party SDO's own standard, does that make ASTM's Works in Suit more or less creative? No. That comparison is done by reviewing the Works in Suit, which have all been produced. Therefore, UpCodes' request for communications with the other eight SDOs are not relevant to fair use factor 2.

2. Communications with other SDOs are Irrelevant to Fair Use Factor 4.

Fair use factor four (*i.e.* "market harm") considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "focuses on whether [UpCodes'] copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the [unauthorized] copy [rather than] the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015) ("*Google Books*"); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021) ("'verbatim copying of the original in its entirety for commercial purposes' may well produce a market substitute for an author's work") (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994)).

Again, UpCodes does not explain how any relationship between ASTM and eight SDOs that have not referenced the Works in Suit is relevant to the impact of UpCodes' infringement on the market for the Works in Suit. Instead, UpCodes misconstrues a portion of ASTM's reply brief on appeal to the Third Circuit to argue that ASTM put its relationships with the eight irrelevant SDOs at issue in this case.

In particular, UpCodes focuses on the portion of ASTM's brief where it stated: "If permitted, UpCodes' use of the Works would disrupt a crucial public-private partnership that promotes the creation of beneficial standards. . . . This result would undermine copyright law's 'ultimate aim' to stimulate the creation of useful works 'for the general public good' by 'secur[ing] a fair return for an 'author's' creative labor.'" Appellant's Redacted Reply Brief at 3 (citing *Harper & Row*, 471 U.S. at 558-59) (citation omitted); *see also id.* at 19. The passage has nothing to do with ASTM's relationships with other SDOs. It is merely making the point that if

governmental action effectively terminates copyright protection and entitles UpCodes to reproduce copyrighted standards, as UpCodes argues, then SDOs will have less incentive to create the standards that are referenced in model codes or by governmental authorities. Thus, ASTM did not put its communications with other SDOs at issue, as UpCodes suggests.

UpCodes does not offer any other explanation as to how documents and communications between ASTM and the other SDOs are relevant to UpCodes' impact on the market for the Works in Suit, so its motion to compel production of these documents should be denied.

3. Requiring ASTM to Search for, Review, and Producing Documents and Communications with Other SDOs Will Be Disproportionate to the Needs of the Case.

Even if UpCodes could clear the bar of relevance, which it cannot, UpCodes seeks sprawling discovery that is not proportionate to the needs of this case. UpCodes' motion is dismissive of the burden it seeks to impose on ASTM. Mot. at 7-8. However, ASTM has repeatedly explained that there is no simple way to search for communications with a host of irrelevant SDOs. For example, there is not a central repository of communication between ICC, IAPMO, NFPA, AWS, UL, NRCA, ASME, API, and ACI that ASTM could simply run search terms against. Instead, ASTM would need to search email communications from numerous individuals and review all potentially relevant responsive documents for communications with each of the eight irrelevant organizations.

The identified organizations publish thousands of standards. *See, e.g.*, https://ulse.org/standards/ (claiming UL's catalog contains over 1,700 standards). Request 4 seeks "All communications with any SDO that has published a code or standard that referenced, cited, or otherwise referred to any Work in Suit about (1) the Work in Suit or (2) any code or standard published by the SDO that has adopted, cited, or otherwise referred to any version of the Work in Suit." To search for such documents would require ASTM to either review all 1,700 standards to determine whether any of the Works in Suit are referenced (work UpCodes apparently has not done due to the burden) or to review all documents and communications concerning UL (and each of the other 7 SDOs) and see what comes back. Requests 3-5 and 11 seeking "[a]ll documents" or "[a]ll communications" are classically overbroad and purport to require ASTM to boil the ocean. *C&S Wholesale Grocers, Inc. v. Gerrity's Super Mkt., Inc.*, 2023 WL 5651997, at *5 (M.D. Pa. Aug. 31, 2023)

(denying motion to compel "all documents concerning the Gerrity's/Wakefern relationship," as overly broad "even if it were temporally limited."). Federal Rule of Civil Procedure 26 does not permit that type of fishing expedition. *Cooper*, 2025 WL 1501883, at *4.

Moreover, ASTM already searched for and produced documents concerning the communications between ICC and ASTM as a compromise to limit the breadth of these requests to the only SDO that references any of the Works in Suit—despite ASTM's strong disagreement that such documents are relevant. The Court should deny UpCodes proposed fishing expedition because the documents UpCodes seeks are not proportional to the needs of this case, particularly in light of the negligible relevance of Requests 3–5, 11, 47 and UpCodes' failure to provide any information suggesting any of the Works in Suit have been referenced by any of the eight remaining SDOs.

## IV. ASTM Already Ran the Agreed-Upon Searches Related to Request No. 11, and There Were No Additional Responsive, Non-Privileged Documents to Produce.

Regarding Request No. 11 related to "non-mandatory" portions of the Works in Suit, ASTM already produced its *Form and Style for ASTM Standards* manual, which provides information on ASTM's use of the terms "non-mandatory," "supplemental," "appendix," and "annex." *See, e.g.*, Ex. 1 at ASTM0000630 (excerpt of *Form and Style for ASTM Standards* explaining how ASTM uses terms these terms in the context of its standards). UpCodes insisted that the production of this information was insufficient and pressed for additional searches to be run for ASTM's custodians. UpCodes identified proposed search terms, and after negotiating with UpCodes to narrow the search terms, ASTM agreed to run two of the search strings that UpCodes identified with respect to Request No. 11 (among others). Ex. 2.[2] ASTM reviewed over 4,000 documents and did not identify any non-privileged, responsive documents for Request 11 that were not previously produced. Accordingly, ASTM has nothing left to produce in response to Request 11, and UpCodes' motion to compel additional documents in response to this request should be denied as moot.

---

[2] The two searches ASTM refused to run returned over 60,000 documents even after further narrowing the searches, far more than what is reasonable to review under the circumstances.

## V. ASTM Already Agreed to Produce Form Agreements Related to the Development of the Works in Suit.

Regarding UpCodes' request for agreements related to the development of the Works in Suit, ASTM already agreed to produce documents sufficient to show the assignment agreements that all participants involved in standards development are required to enter into before they can participate in development. Accordingly, to the extent that any individuals from ICC, IAPMO, NFPA, AWS, UL, NRCA, ASME, API, or ACI participate in the creation of the Works in Suit, such individuals would have assigned any copyright interest to ASTM before providing any comment, feedback, or proposed language. Accordingly, ASTM submits that UpCodes' motion with respect to Request 47 is also moot.

* * *

Accordingly, for all the foregoing reasons, UpCodes motion to compel should be denied in its entirety.

Respectfully submitted,

Jane W Wise

Jane W. Wise